**Opinion issued August 29, 2013**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-12-00207-CR

## NO. 01-12-00208-CR

———————————

**SUNDAY AGBOGWE, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the County Criminal Court at Law No. 12**
**Harris County, Texas**
**Trial Court Case Nos. 1767858 & 1767859**

---

## O P I N I O N

A jury convicted appellant, Sunday Agbogwe, of two counts of the misdemeanor offense of assault.[1] The trial court assessed punishment at one year's

---

[1]     *See* TEX. PENAL CODE ANN. § 22.01(a)(1) (Vernon 2011). The assault against Eucharia Ozoh was tried in cause number 1767858 and resulted in appellate cause

confinement, suspended for one year, and a $500 fine in cause number 1767858 and twenty days' confinement in cause number 1767859, to run concurrently. The trial court also made an affirmative finding of family violence in both cause numbers. In ten issues, appellant contends that (1) the trial court erred in admitting evidence about his ethnicity; (2)–(9) his trial counsel rendered ineffective assistance of counsel under both the United States and Texas constitutions; and (10) the trial court erroneously included an affirmative finding of family violence in the judgment for cause number 1767859. The State raises a cross-point and contends, in cause number 1767858, that the trial court orally pronounced a fine of $1,000 but assessed a $500 fine in its written judgment.

We modify the judgments of the trial court and affirm as modified.

**Background**

Appellant was in a dating relationship and lived with one of the complainants, Eucharia Ozoh, and they operated a bar together. On June 18, 2011, appellant, who is Nigerian, hosted a traditional Nigerian event called a "wake keeping" at the bar. A wake keeping is a party honoring a member of the community who has had a death in the family. In preparation for the event, Ozoh bought several bottles of liquor. She testified that the drinks served at this party needed to be purchased and that the bottles were not to be given away to the

number 01-12-00207-CR. The assault against Brenetha Caldwell was tried in cause number 1767859 and resulted in appellate cause number 01-12-00208-CR.

2

guests. She asked her friend Brenetha Caldwell, the other complainant, to assist her in serving guests at the party. It is undisputed that Caldwell is not related to appellant and that she was not a member of appellant's household. Ozoh also testified that Majerum McCarthy, whom she knew but was not friends with, was also present and helping serve.

During the course of the evening, Ozoh observed appellant handing out bottles of liquor to guests without requiring payment. Ozoh saw appellant give a guest the last bottle of cognac, worth $100, and Ozoh approached the guest and asked him if he needed the entire bottle because that was the last bottle and the party was still ongoing. The guest replied that he did not need the entire bottle, and he gave the bottle back to Ozoh. As Ozoh placed the bottle back on the shelf, appellant "swung at [her]" with his fist. Appellant hit her twice and continued to hit her as she fell to the floor, at which point appellant kicked her on her back. Caldwell tried to intervene, and appellant started hitting her as well. When the police arrived, after Caldwell called 9-1-1, Ozoh was hesitant to talk to them. She acknowledged that she had asked the State to drop the charges against appellant because she was scared. She testified that appellant, as well as friends of his, had asked her to drop the charges. Defense counsel did not object to this testimony. The State asked, "Even though you wanted to drop charges, does that mean—are you saying that it didn't happen?" Ozoh responded, "It happened."

3

During Ozoh's testimony, the State asked her about the circumstances under which she and appellant decided to go into business together. She stated that appellant had previously owned a medical supply business and that he was having difficulties with one of his employees. When Ozoh and appellant were discussing these problems, appellant told her that he and the employee "had a big altercation in the office and police came and that he almost hit her." Defense counsel objected, and the trial court sustained the objection. Defense counsel did not request a limiting instruction or an instruction to disregard this testimony.

Caldwell testified that Ozoh showed her that appellant was charging guests for drinks and then pocketing the money instead of putting it in the cash register. Neither Ozoh nor Caldwell confronted appellant about this. Later, Caldwell saw Ozoh walk up to a guest after appellant had given him the last bottle of cognac and ask if he would mind letting her have the bottle so she could continue to serve the guests. The guest gave the bottle back. Ozoh was standing next to Caldwell as she put the bottle back on the shelf, and Caldwell testified that "everything was quiet-like and all [of a] sudden, I just looked and [appellant] was beating [Ozoh]." Caldwell saw appellant beating Ozoh on the top of her head with his fist and kicking her in her side. Caldwell tried to shield Ozoh from appellant's blows, but appellant then pulled Caldwell over Ozoh and hit her on the left side of her face with a closed fist. Caldwell ran outside and called 9-1-1. The responding police

4

officer noticed redness in the area where appellant had hit Caldwell, and she had a bruise several days later.

Caldwell testified that, while the case was pending, Ozoh and friends of appellant asked her to drop the charges against appellant. She also testified that appellant's friends asked her not to comply with the subpoena issued to her in the case and not to show up in court. These individuals offered to pay any fines that Caldwell incurred for her noncompliance. Defense counsel did not object to this testimony.

Houston Police Department Officer J. Morant testified that she responded to a 9-1-1 call concerning two assaults at the bar. Caldwell, who was standing outside when Officer Morant arrived, looked "a little upset" and was "a little shaky," but she was able to tell Morant about what had happened. Ozoh did not want to speak with Officer Morant initially, but she did eventually speak with her. Officer Morant described Ozoh's demeanor as "really nervous." Officer Morant observed "some redness" on the area near Caldwell's ear.

McCarthy testified that she was bartending at the bar on June 18, 2011. At one point during the evening, Ozoh showed McCarthy that appellant was giving away liquor. McCarthy saw Ozoh ask the guest who received the liquor if he wanted to buy it. After that, Ozoh and appellant "started back and forth with one another, I guess, about the situation; and then [appellant] hit [Ozoh]" with his fist,

5

and Ozoh fell to the floor. McCarthy only saw appellant hit Ozoh once. After Ozoh fell to the floor, Caldwell came over, crouched down on the floor with Ozoh, and asked appellant what he was doing. In response, appellant hit Caldwell with a closed fist.

On re-direct examination of McCarthy, the prosecutor approached the bench and informed the trial court that she "would like to ask this witness about the extraneous criminal mischief when the defendant came back [to the bar] the next day and damaged property . . . ." The trial court refused to allow the State to explore this line of questioning.

On cross-examination of Ozoh, which occurred the day after McCarthy testified, defense counsel asked whether she changed the locks on the doors to the bar after this incident. Ozoh responded that she did. The following exchange then occurred:

| [Defense counsel]: | And did that then eliminate [appellant's] entry into the bar? |
|---|---|
| [Ozoh]: | It did not. |
| [Defense counsel]: | And now, did [appellant] rekey the locks? |
| [Ozoh]: | He did. |
| [Defense counsel]: | Did you complain about that? |
| [Ozoh]: | He did and vandalized the place. He did rekey it, went there, vandalized, and took every single thing in that bar. |

6

On re-direct examination, the State questioned Ozoh about this vandalism, and the trial court admitted ten photographs which depicted missing television sets, a broken mirror, and paint splashed on a wall of the bar.

Pat Otalor testified on appellant's behalf and stated that she was present at the bar on the night of the incident. She stated that guests at a wake keeping are not expected to pay for their drinks. Otalor was able to see appellant and Ozoh having an argument, but she did not see either Ozoh or Caldwell fall to the floor.

Daniel Nwatune, another guest at the party, testified that he told appellant that he needed some cognac. Right after appellant gave him the drink, Ozoh "snatched" the drink away in an aggressive and impolite manner and asked him if he had paid for the drink. As they were talking, appellant came back over and Nwatune explained the situation. Appellant and Ozoh then started arguing, and Ozoh shouted at appellant. Nwatune testified that appellant and Ozoh argued, but appellant did not hit Ozoh or Caldwell.

Gladys Uwagboi testified that she heard Ozoh say, "I will show him, I will tell him that he's a little rat." She did not see appellant hit Ozoh. Festus Irabor testified that he also heard Ozoh call appellant a "little rat" and that, although he saw appellant and Ozoh arguing, he did not see anyone get hit during the party.

Appellant testified on his own behalf. He stated that he was surprised when Ozoh and Caldwell arrived at the party because they were not invited. He did not

7

remember seeing McCarthy at the party at all. He stated Nwatune requested a bottle of cognac, and, after he gave him the bottle, Nwatune told him that Ozoh had snatched the bottle away from him. When appellant questioned Ozoh about this, Ozoh "just went off on [him]." Some of the guests took appellant outside to defuse the situation.

Appellant testified that he did not intend to vandalize the bar when he went to it the next day. He called a locksmith to let him in the building, and, once inside, he decided to remove all of the things in the bar that he had purchased himself, including the television sets. He used a ladder to remove one of the televisions, and, at one point, the ladder fell and smashed a mirror. He also testified that paint got on a wall and the floor when he picked up a paint can that he did not know was partially opened.

During the State's cross-examination of appellant, the following exchange occurred:

| [State]: | You're from Nigeria, correct? |
| [Appellant]: | Yes, ma'am. |
| [State]: | And in the Nigerian culture, women typically take a subservient role to the man, correct? |
| [Appellant]: | What do you mean? |
| [Defense counsel]: | Objection, Judge. |
| The Court: | Overruled. |

8

| | |
|---|---|
| [Appellant]: | What do you mean? I don't understand what you mean by that. |
| [State]: | The man is usually, for lack of a better word, the boss of the family? |
| [Appellant]: | I don't know about that. |
| [Defense counsel]: | Objection, Judge. It is speculation. |
| The Court: | Overruled. He says no. I overrule the objection. |
| [State]: | So, you don't know? |
| [Appellant]: | No, I don't know about that. |

The State then asked appellant if it bothered him that Ozoh had a more dominant role in their relationship. Appellant responded that it did not. Defense counsel did not object to this question.

The State also had the following exchange with appellant later in cross-examination:

| | |
|---|---|
| [State]: | Do you remember threatening Ms. Ozoh by emulating a gun and telling her that if anything happens to you— |
| [Defense counsel]: | Objection. |
| [Appellant]: | That's not true. |
| [Defense counsel]: | It's out of character and— |
| The Court: | That's not a legal objection. Overruled. |
| [State]: | Do you remember emulating a gun and telling her if anything happened to you, you're going to kill her and you're going to kill Ms. Caldwell? |
| [Appellant]: | It's all allegation. That is not true. |

9

The State then recalled Ozoh in rebuttal. The following occurred:

| | |
|---|---|
| [State]: | And Nigerian culture, would they prefer to take care of something like this assault within the community or are they okay with us including— |
| [Defense counsel]: | Objection. Relevance. |
| The Court: | Overruled. |
| [Ozoh]: | It's very common. |
| [State]: | I'm sorry? |
| [Ozoh]: | It happens. And it's not looked at as anything wrong. A husband can beat up a wife, a man can beat up a woman and nothing happens to them. |

Defense counsel did not object to Ozoh's answer.

The State referenced appellant's and Ozoh's testimony during closing argument:

> We also talked about how the Nigerian community would like to keep this incident within that community. And that is reflected within the 9-1-1 call. They don't want anybody calling 9-1-1. They don't want the police in their business. So, what do they do? They get up here and tell you nothing happened. That way, he gets to walk away and it's kept in the community. But if you come back with a not guilty verdict, that tells him what he's done is absolutely right. He is free in this country to beat any woman that he wants, that is absolutely inappropriate. The correct verdict in this case is a guilty verdict.

The State also, during closing argument, reminded the jury that the case was about whether appellant assaulted Ozoh and Caldwell, and, to that end, the testimony

10

about the vandalism of the bar was not relevant. The State urged the jury not to "worry about these side issues, they really aren't relevant."

The jury found appellant guilty of both counts of assault. When the trial court orally pronounced appellant's sentence for cause number 1767858, the assault on Ozoh, it sentenced appellant to one year's confinement, suspended the sentence, and placed him on community supervision for two years. It also imposed a $1,000 fine. For cause number 1767859, the assault on Caldwell, it sentenced appellant to twenty days' confinement.

The written judgments for both convictions included an affirmative family violence finding pursuant to Code of Criminal Procedure article 42.013. The judgment for cause number 1767858 also stated that appellant was to be placed on community supervision for one year, and it imposed a $500 fine.

Appellant did not move for a new trial. This appeal followed.

**Admission of Evidence of Ethnicity**

In his first issue, appellant contends that the trial court erred in allowing testimony concerning his ethnicity, specifically, appellant's testimony concerning whether, in Nigerian culture, women usually take a subservient role to men and Ozoh's testimony that the Nigerian community tends to keep matters such as assaults within the community and that men can beat women with impunity in the community. Appellant contends that this testimony violates his due process rights.

11

### A.    Appellant's Constitutional Argument

We agree with appellant that "[r]acially prejudicial remarks and appeals to racial prejudice have no place in a courtroom." *Bryant v. State*, 25 S.W.3d 924, 926 (Tex. App.—Austin 2000, pet. ref'd) (citing *Allison v. State*, 248 S.W.2d 147, 148 (Tex. Crim. App. 1952)).  We do not believe, however, that the trial court's allowance of the complained-of questions and testimony rises to the level of fundamental error, such that appellant was not required to comply with the general rules of error preservation before presenting, for the first time on appeal, his complaint that the questions violated his due process rights.

The Fourteenth Court of Appeals' opinion in *Moreno v. State* is instructive. *See* 195 S.W.3d 321 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd).  *Moreno* involved the question of whether the defendant's due process rights were violated when the State referred to his status as an illegal immigrant during closing argument and argued that this status warranted a more severe punishment than community supervision.  *Id.* at 328–29.  The prosecutor in *Moreno* made the following argument:

> You heard him testify that he walked over here, he walked across the border illegally.  You know what he's going to do if you put him on probation?  He's going to walk right back.  That is no punishment at all.  Even if he is put on probation, he can't meet the terms of his probation.  He's here illegally, he's automatically in violation of the law.  Automatically in violation of federal law by his mere presence because he is here illegally.  He has to work faithfully at employment.

12

He can't work if he is here illegally. He has to remain within a specified place. He's not going to do that . . . .

He comes over here illegally and poisons our society with all these drugs. If he wants to deal heroin, why doesn't he go back to Mexico and do it in his own country instead [of] coming here and poisoning our citizens of Harris County and selling these drugs in our community?

*Id.* at 328. Moreno did not object to this argument. *Id.*

On appeal, Moreno argued that an objection to the State's argument was not necessary because the argument violated his fundamental rights. *Id.* at 329. The Fourteenth Court of Appeals disagreed, relying on the Court of Criminal Appeals' decision in *Cockrell v. State*, which had held that the defendant's failure to object to an allegedly improper jury argument forfeited his right to complain about the argument on appeal. *Id.* (citing *Cockrell v. State*, 933 S.W.2d 73, 89 (Tex. Crim. App. 1996)). The *Moreno* court noted that the Court of Criminal Appeals had applied *Cockrell* even in cases in which the closing argument allegedly violated the defendant's due process rights. *Id.* (citing *Ladd v. State*, 3 S.W.3d 547, 569–70 (Tex. Crim. App. 1999)). The court ultimately held that "even if the complained-of argument violated appellant's due process rights and even if it could not have been cured by an instruction to disregard, appellant failed to preserve error by his failure to voice an objection in the trial court." *Id.*

Although *Moreno* involved allegedly improper jury argument and this case involves allegedly improper questioning, we follow *Moreno* in holding that the

13

trial court's allowance of the State's questions in this case does not constitute fundamental error. *See id.*; *see also Clark v. State*, 365 S.W.3d 333, 340 (Tex. Crim. App. 2012) (noting that fundamental error occurs when certain constitutional rights are violated but holding that defendant "forfeited his denial-of-due-process claim by not properly preserving error at trial"). As such, to preserve his complaint that the State's questions violated his due process rights, appellant was required to object on this basis to the trial court.

Generally, to preserve error, the complaining party must make a timely request, objection, or motion that states the grounds for the ruling sought with sufficient specificity to make the trial court aware of the complaint, unless the specific grounds were apparent from the context. TEX. R. APP. P. 33.1(a)(1)(A). To avoid forfeiting a complaint on appeal, the complaining party must "let the trial judge know what he wants, why he thinks he is entitled to it, and to do so clearly enough for the judge to understand him at a time when the judge is in the proper position to do something about it." *Pena v. State*, 285 S.W.3d 459, 464 (Tex. Crim. App. 2009) (quoting *Lankston v. State*, 827 S.W.2d 907, 909 (Tex. Crim. App. 1992)). This gives both the trial court and the opposing party a chance to correct the error. *Id.* (citing *Reyna v. State*, 168 S.W.3d 173, 179 (Tex. Crim. App. 2005)). The trial court needs to be presented with and have the chance to rule upon the defendant's specific constitutional objection "because it can have such heavy

14

implications on appeal." *Clark*, 365 S.W.3d at 340 (holding that trial court "should know when it is being asked to make a constitutional ruling because constitutional error is subject to a much stricter harm analysis on appeal"). "Whether a party's particular complaint is preserved depends on whether the complaint on appeal comports with the complaint made at trial." *Pena*, 285 S.W.3d at 464 (citing *Reyna*, 168 S.W.3d at 177). We consider both the context in which the complainant was made and the parties' shared understanding at that time. *Id.*

Here, during cross-examination of appellant, the following exchange occurred:

| [State]: | And in the Nigerian culture, women typically take a subservient role to the man, correct? |
|---|---|
| [Appellant]: | What do you mean? |
| [Defense counsel]: | Objection, Judge. |
| The Court: | Overruled. |
| [Appellant]: | What do you mean? I don't understand what you mean by that. |
| [State]: | The man is usually, for lack of a better word, the boss of the family? |
| [Appellant]: | I don't know about that. |
| [Defense counsel]: | Objection, Judge. It is speculation. |
| The Court: | Overruled. He says no. I overrule the objection. |
| [State]: | So you don't know? |
| [Appellant]: | No, I don't know about that. |

15

Defense counsel did not object on due process or other constitutional grounds, and there is no indication that either the trial court or the State understood defense counsel to be making a constitutional objection. Then, when the State called Ozoh as a rebuttal witness, the following occurred:

| | |
|---|---|
| [State]: | And Nigerian culture, would they prefer to take care of something like this assault within the community or are they okay with us including— |
| [Defense counsel]: | Objection. Relevance. |
| The Court: | Overruled. |
| [Ozoh]: | It's very common. |
| [State]: | I'm sorry? |
| [Ozoh]: | It happens. And it's not looked at as anything wrong. A husband can beat up a wife, a man can beat up a woman and nothing happens to them. |

Again, defense counsel objected solely on relevance grounds, and he did not raise a due process or other constitutional objection to this questioning. We conclude that appellant failed to preserve for appellate review his complaint that the State's questioning of him and Ozoh violated his due process or other constitutional rights. *See Clark*, 365 S.W.3d at 340 (holding that defense counsel's "badgering, sidebar, argumentative, invading the province of the jury, and mischaracterization" objections did not preserve due process complaint for appellate review).

16

## B. *Appellant's Evidentiary Objections*

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Torres v. State*, 71 S.W.3d 758, 760 (Tex. Crim. App. 2002) (citing *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001)); *see also Gallo v. State*, 239 S.W.3d 757, 762 (Tex. Crim. App. 2007) ("The admissibility of a photograph is within the sound discretion of the trial judge."). We will not reverse the trial court's ruling unless the ruling falls outside the zone of reasonable disagreement. *Torres*, 71 S.W.3d at 760; *see also Taylor v. State*, 268 S.W.3d 571, 579 (Tex. Crim. App. 2008) (holding that trial court abuses its discretion only if its decision is "so clearly wrong as to lie outside the zone within which reasonable people might disagree"). In applying the abuse of discretion standard, we may not reverse a trial court's admissibility decision solely because we disagree with it. *Powell v. State*, 63 S.W.3d 435, 438 (Tex. Crim. App. 2001). We will not disturb a trial court's evidentiary ruling if it is correct on any theory of law applicable to that ruling. *De La Paz v. State*, 279 S.W.3d 335, 344 (Tex. Crim. App. 2009).

Defense counsel objected to the State's questioning of appellant solely on speculation grounds, and the trial court overruled this objection. On appeal, appellant presents no argument or authorities that the question called for speculation or that appellant lacked the personal knowledge necessary to answer the questions. *See Higgins v. State*, 924 S.W.2d 739, 745 (Tex. App.—Texarkana

1996, pet. ref'd) (analyzing complaint that trial court allowed speculative testimony under Rule of Evidence 602, which requires witness to have personal knowledge of matter to which he is testifying); *see also* TEX. R. EVID. 602. As a general rule, the failure to present any argument on appeal with respect to a particular issue waives that issue. *See Bridgewater v. State*, 905 S.W.2d 349, 354 n.5 (Tex. App.—Fort Worth 1995, no pet.).

Defense counsel objected to the relevance of the State's question posed to Ozoh of whether the Nigerian community prefers to handle matters such as assaults within the community itself. Relevant evidence is evidence that has "any tendency to make the existence of any fact that is of consequence of the determination of the action more probable or less probable than it would be without the evidence." TEX. R. EVID. 401. Defense witnesses may be impeached with evidence of bias or interest. *Moreno v. State*, 22 S.W.3d 482, 486 (Tex. Crim. App. 1999); *London v. State*, 739 S.W.2d 842, 846 (Tex. Crim. App. 1987) ("The general rule is that either party is entitled, subject to reasonable restrictions placed by the trial judge, to show any relevant fact which would or might tend to establish ill feeling, bias, motive, interest or animus on the part of any witness testifying against him."); *see also Sparks v. State*, 943 S.W.2d 513, 515 (Tex. App.—Fort Worth 1997, pet. ref'd) ("The credibility of a witness may be attacked by evidence that the witness is slanting his testimony against or in favor of a party as a result of

18

personal interest or bias in the cause."). "A successful showing of bias on the part of a witness would have a tendency to make the facts to which he testified less probable in the eyes of the jury than it would be without such testimony." *McKnight v. State*, 874 S.W.2d 745, 746 (Tex. App.—Fort Worth 1994, no pet.).

As the State points out, appellant called several witnesses to testify on his behalf, all of whom are members of the Nigerian community and all of whom testified that, although they saw appellant and Ozoh arguing, they did not see this argument escalate into an argument involving physical violence. Testimony that members of the Nigerian community generally prefer to handle themselves matters that are otherwise appropriate for law enforcement is relevant to the question of whether appellant's witnesses are biased against the State, which ultimately affects their credibility.[2] *See London*, 739 S.W.2d at 846 ("[T]he general rule is that the State is clearly entitled to show any bias a defense witness might have against the State or the prosecutor."). We conclude that the trial court did not abuse its discretion in overruling defense counsel's relevance objection to the question posed to Ozoh.

We overrule appellant's first issue.

---

[2] We note that the State also questioned Daniel Nwatune concerning the Nigerian community's preference for keeping criminal matters within the community. During this line of questioning, defense counsel objected twice, on speculation and argumentative grounds. Defense counsel did not object on the basis of relevance.

19

**Ineffective Assistance of Counsel**

In his second through ninth issues, appellant contends that he received ineffective assistance of counsel under the United States and Texas constitutions[3] when his trial counsel (1) elicited testimony concerning alleged extraneous bad acts; (2) failed to object to evidence that appellant had requested that both complainants drop the charges against him; (3) failed to request a limiting instruction after the trial court sustained his objection to Ozoh's testimony regarding appellant's altercation with a prior business partner; and (4) failed to request a limiting instruction after the trial court sustained his objection to testimony concerning an alleged threat appellant made to Ozoh.

### A.    *Standard of Review*

To establish a showing of ineffective assistance of counsel, an appellant must demonstrate, by a preponderance of the evidence, that (1) his counsel's performance was deficient and (2) there is a reasonable probability that the result of the proceeding would have been different but for his counsel's deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064

---

[3]    Because appellant presents no argument or authority that the Texas Constitution provides different protection than the United States Constitution in the ineffective assistance of counsel context, we make no distinction between his state and federal claims. *See Garcia v. State*, 308 S.W.3d 62, 65 n.1 (Tex. App.—San Antonio 2009, no pet.) (citing *Arnold v. State*, 873 S.W.2d 27, 33 (Tex. Crim. App. 1993) and *Sturchio v. State*, 136 S.W.3d 21, 23 (Tex. App.—San Antonio 2002, no pet.)).

(1984); *Perez v. State*, 310 S.W.3d 890, 893 (Tex. Crim. App. 2010); *Cannon v. State*, 252 S.W.3d 342, 348–49 (Tex. Crim. App. 2008). The appellant's failure to make either of the required showings of deficient performance and sufficient prejudice defeats the claim of ineffective assistance. *Rylander v. State*, 101 S.W.3d 107, 110 (Tex. Crim. App. 2003); *see also Williams v. State*, 301 S.W.3d 675, 687 (Tex. Crim. App. 2009) ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong.").

The appellant must first show that his counsel's performance fell below an objective standard of reasonableness. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The second prong of *Strickland* requires the appellant to demonstrate prejudice—"a reasonable probability that, but for his counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance, and, therefore, the appellant must overcome the presumption that the challenged action constituted "sound trial strategy." *Id.* at 689, 104 S. Ct. at 2065; *Williams*, 301 S.W.3d at 687. Our review

21

is highly deferential to counsel, and we do not speculate regarding counsel's trial strategy. *See Bone v. State*, 77 S.W.3d 828, 833 (Tex. Crim. App. 2002). To prevail on an ineffective assistance claim, the appellant must provide an appellate record that affirmatively demonstrates that counsel's performance was not based on sound strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *see Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Mallett*, 65 S.W.3d at 63; *see also Massaro v. United States*, 538 U.S. 500, 504–05, 123 S. Ct. 1690, 1694 (2003) ("If the alleged error is one of commission, the record may reflect the action taken by counsel but not the reasons for it. The appellate court may have no way of knowing whether a seemingly unusual or misguided action by counsel had a sound strategic motive or was taken because the counsel's alternatives were even worse. The trial record may contain no evidence of alleged errors of omission, much less the reason underlying them."). Because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record, the Court of Criminal Appeals has stated that trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews that record and concludes that counsel was ineffective. *See Rylander*, 101

22

S.W.3d at 111; *Bone*, 77 S.W.3d at 836; *Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002).

### B. Counsel's Alleged Errors

#### 1. Eliciting Extraneous Bad Acts Testimony

In his second and third issues, appellant contends that defense counsel rendered ineffective assistance when he elicited testimony from Ozoh concerning appellant's alleged subsequent vandalism of the bar after the trial court had already refused to allow the State to question McCarthy about this topic.

Courts have held that allowing the jury to hear "prejudicial and clearly inadmissible evidence" during the guilt phase of the trial—such as evidence concerning the defendant's prior convictions—"could serve no strategic value" in cases in which the defendant's defense "rested almost entirely on his credibility." *Robertson v. State*, 187 S.W.3d 475, 484 (Tex. Crim. App. 2006); *Garcia v. State*, 308 S.W.3d 62, 68 (Tex. App.—San Antonio 2009, no pet.). *But see Williams*, 301 S.W.3d at 687 (holding, when defense counsel informed trial court that he had spoken with defendant about opening door to extraneous offenses and defendant had agreed to that decision, that appellate court "will not second-guess legitimate strategic or tactical decisions made by counsel in the midst of trial"). "Opening the door to otherwise inadmissible extraneous offense evidence that undermines the

defendant's character and credibility serves no purpose other than to prejudice the defendant's ability to present his defense." *Garcia*, 308 S.W.3d at 69.

Here, during McCarthy's testimony, the State approached the bench and stated, "Your Honor, at this time I would like to ask this witness about the extraneous criminal mischief when the defendant came back the next day and damages property . . . ." The trial court refused to allow this line of questioning. Then, on cross-examination of Ozoh, defense counsel asked her about the actions that she took "in terms of the locks on the doors of the bar" after the incident. Ozoh responded that she changed the locks. The following exchange occurred:

| [Defense counsel]: | And did that then eliminate [appellant's] entry into the bar? |
|---|---|
| [Ozoh]: | It did not. |
| [Defense counsel]: | And now, did [appellant] rekey the locks? |
| [Ozoh]: | He did. |
| [Defense counsel]: | Did you complain about that? |
| [Ozoh]: | He did and vandalized the place. He did rekey it, went there, vandalized, and took every single thing in that bar. |

Defense counsel questioned Ozoh further about appellant's alleged vandalism of the bar, and the State also questioned Ozoh about the vandalism on redirect. The trial court then admitted ten pictures depicting the bar after the alleged vandalism had occurred. These pictures reflected missing television sets, a broken mirror, and paint on a wall. Appellant admitted that he removed the television sets that he

24

had purchased from the bar, but he denied vandalizing the bar. He stated that he had been using a ladder to remove a television, and the ladder fell and hit the mirror, smashing it. He also stated that he moved a paint can, but he did not realize that the can was partially open, which is how paint ended up on a wall and the floor. During closing argument, the prosecutor reminded the jury on three separate occasions that the question before it was whether appellant had assaulted Caldwell and Ozoh and that the vandalism that had occurred at the bar was not relevant to that determination.

Even if defense counsel's actions fell below an objective standard of reasonableness, to establish his claim of ineffective assistance, appellant must also demonstrate prejudice—a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Thompson*, 9 S.W.3d at 812; *see also Williams*, 301 S.W.3d at 687 ("An appellant's failure to satisfy one prong of the *Strickland* test negates a court's need to consider the other prong."). Appellant cites the San Antonio Court of Appeals' decision in *Garcia* for the proposition that opening the door to inadmissible extraneous bad acts evidence "undermines the defendant's character and credibility" and is particularly prejudicial when the defensive strategy is based "almost entirely on the defendant's credibility versus the complainant's credibility." 308 S.W.3d at 68–69.

Unlike in *Garcia*, an aggravated sexual assault case in which the primary witnesses testifying concerning the offense itself were the defendant and the complainant, both Caldwell and Ozoh, as well as McCarthy, a disinterested witness, testified that appellant assaulted both complainants. Both Caldwell and Ozoh testified that appellant or his friends later attempted to pressure them into dropping the charges against appellant. When Ozoh was asked by the prosecutor, "Even though you wanted to drop charges, does that mean—are you saying that it didn't happen?" she replied, "It happened." Officer Morant testified that, when she arrived at the scene, she observed redness near Caldwell's ear, which is where Caldwell alleged that appellant had hit her. Furthermore, during closing argument, the prosecutor stated on three occasions that the case was not "about the vandalism that occurred," that the vandalism "really doesn't have anything to do with whether this defendant assaulted the complainants on that night," and that the jury should "just look at the elements that have to be proven, don't worry about these side issues, they really aren't relevant."

In light of the evidence presented, we conclude that appellant has not established, by a preponderance of the evidence, a reasonable probability that, but for defense counsel's actions in eliciting testimony concerning appellant's alleged vandalism of the bar, the jury would have found appellant not guilty. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068 (holding that reasonable probability

26

that result would have been different is probability sufficient to undermine confidence in outcome). Because appellant has not demonstrated prejudice as a result of these actions, his ineffective assistance claims relating to these actions fails.

We overrule appellant's second and third issues.

### 2. Failure to Object to Testimony that Appellant Had Requested that the Complainants Drop the Charges

In issues four and five, appellant contends that his trial counsel rendered ineffective assistance when he failed to object to testimony concerning requests made to Caldwell and Ozoh by appellant and his friends in an attempt to persuade the complainants to drop the charges against him.

Caldwell testified on direct examination that appellant's friends had contacted her and asked her to drop the charges against appellant. These individuals asked Caldwell not to comply with the subpoena that had been issued, and they assured her that, if she did not comply with the subpoena, they would pay the fines associated with her noncompliance. Ozoh also testified that appellant and his friends had asked her to drop the charges. Defense counsel did not object to any of this testimony.

Appellant argues that this failure to object constituted ineffective assistance because the evidence was not relevant. As the State points out, this Court has previously held that "[a]n attempt to tamper with a witness is evidence of

27

'consciousness of guilt.'" *Johnson v. State*, — S.W.3d —, No. 01-10-00314-CR, 2011 WL 1753209, at *2 (Tex. App.—Houston [1st Dist.] May 5, 2011, pet. ref'd) (holding that "affidavit of non-prosecution" prepared by defendant and presented to complainant to sign was evidence of attempt to induce complainant not to testify and did not constitute hearsay); *see also Wilson v. State*, 7 S.W.3d 136, 141 (Tex. Crim. App. 1999) (holding that defendant's references to witness's father and new baby "reasonably could have been interpreted as a veiled attempt to influence [the witness's] testimony" and that "[s]uch an attempt to tamper with a witness is evidence of 'consciousness of guilt'").

Evidence that appellant and his friends requested that Caldwell and Ozoh drop the charges against appellant, asked Caldwell to ignore her subpoena, and offered to pay any fines assessed against Caldwell for her noncompliance with the subpoena is substantively admissible as evidence of consciousness of guilt. Defense counsel's failure to object to admissible evidence does not constitute ineffective assistance of counsel. *Lee v. State*, 29 S.W.3d 570, 579–80 (Tex. App.—Dallas 2000, no pet.); *see also Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012) ("The failure to object to proper questions and admissible testimony . . . is not ineffective assistance.").

Appellant also contends that defense counsel's failure to object constituted ineffective assistance because the State did not provide pre-trial notice of its intent

28

to use this extraneous bad acts evidence, and, therefore, evidence of these acts was inadmissible, but defense counsel did not object to the State's failure to provide notice of these acts as required by Rule 404(b).

Rule of Evidence 404(b) provides that, generally, evidence of other bad acts is not admissible to prove the character of the defendant in order to show action in conformity with that character, but this evidence may be admissible for other purposes "provided that upon timely request by the accused in a criminal case, reasonable notice is given in advance of trial of intent to introduce in the State's case-in-chief such evidence other than that arising in the same transaction." TEX. R. EVID. 404(b). Absent a request for notice under Rule 404(b), the State is not required to give such notice. *Webb v. State*, 995 S.W.2d 295, 298 (Tex. App.—Houston [14th Dist.] 1999, no pet.). If the State provides notice voluntarily, it has a duty to provide information that is complete. *Blackmon v. State*, 80 S.W.3d 103, 108 (Tex. App.—Texarkana 2002, pet. ref'd). Rule 404(b) does not expressly require the State to provide written notice of its intent to introduce evidence of extraneous misconduct. *See id.*; *Chimney v. State*, 6 S.W.3d 681, 697 (Tex. App.—Waco 1999, pet. ref'd).

In *Blackmon*, a sexual assault of a child case, the State voluntarily gave notice of its intent to use extraneous offense evidence, but it did not give notice of its intent to offer the testimony of the complainant's brother because it mistakenly

believed that the brother's testimony related to the same event as the complainant's testimony. *See* 80 S.W.3d at 107–08. In evaluating Blackmon's ineffective assistance claim, the Texarkana Court of Appeals acknowledged that Rule 404(b) does not require the State to give its extraneous offense notice in writing and noted that "[i]t is not clear from the record whether Blackmon's attorney had notice of the State's intent to introduce the extraneous offenses contained in [the brother's] testimony." *Id.* at 108. The court concluded that "[w]ithout a clear indication in the record that Blackmon's counsel did not receive notice of the State's intent to introduce the extraneous offenses contained in [the brother's] testimony, we cannot say counsel's performance was deficient." *Id.*

Here, the record does not indicate that defense counsel requested notice pursuant to Rule 404(b). The State, however, voluntarily provided notice that it intended to introduce evidence of a prior conviction and three other extraneous bad acts by appellant. This notice did not include the State's intent to introduce evidence that appellant, or his friends at appellant's direction, contacted Caldwell and Ozoh and requested that they drop the charges against him. When Caldwell and Ozoh testified at trial concerning the requests by appellant and his friends, defense counsel did not object on the basis that he never received notice of these acts. As previously stated, appellant did not move for a new trial or otherwise assert his ineffective assistance of counsel claims in a post-judgment motion.

30

Thus, the only indication that defense counsel did not actually receive notice of the State's intent to use these acts is appellant's assertion in his appellate brief.

Although the written Rule 404(b) notice provided in this case does not include these extraneous acts, Rule 404(b) does not require that this notice be in writing, and the record does not affirmatively indicate that the State never gave notice of its intent to introduce these acts to defense counsel. It is purely speculative to assume that, because these extraneous acts were not included in the written Rule 404(b) notice, the State never gave notice of its intent to introduce this evidence. Because the record does not clearly establish that defense counsel did not receive notice of the State's intent to introduce Caldwell's and Ozoh's testimony concerning appellant's attempts to persuade them to drop the charges, we cannot conclude that defense counsel's failure to object to this testimony on the grounds that he lacked notice pursuant to Rule 404(b) constituted deficient performance. *See Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness); *Blackmon*, 80 S.W.3d at 108.

We overrule appellant's fourth and fifth issues.

### 3. *Failure to Request Limiting Instructions*

In his sixth and seventh issues, appellant contends that defense counsel rendered ineffective assistance when he failed to request a limiting instruction after the trial court sustained his objection to Ozoh's testimony concerning an

31

altercation between appellant and his previous business partner. In his eighth and ninth issues, appellant contends that defense counsel rendered ineffective assistance when he failed to request a limiting instruction after the trial court sustained his objection to testimony concerning threats made by appellant to Ozoh.

Rule of Evidence 105 provides, "When evidence which is admissible as to one party or for one purpose but not admissible as to another party or for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly . . . ." TEX. R. EVID. 105(a); *Bryant v. State*, 282 S.W.3d 156, 170–71 (Tex. App.—Texarkana 2009, pet. ref'd) ("When evidence is properly admitted for one purpose, but can have meanings and uses beyond that proper purpose, the trial court may—*and* should—immediately define and limit the jury's ability to consider such evidence to only those areas which are permitted under our Rules of Evidence."). Rule 105(a) does not require an objection to the admission of evidence before requesting a limiting instruction on that evidence. *Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001).

The failure of defense counsel to request a limiting instruction is not, by itself, ineffective assistance. *Ali v. State*, 26 S.W.3d 82, 88 (Tex. App.—Waco 2000, no pet.) (finding no basis for conclusion that defense counsel did not exercise reasonable professional assistance when record did not contain counsel's reason for not requesting instruction). Although "hindsight speculation may

32

suggest a limiting instruction of some nature" should have been given, a reasonable explanation for counsel's actions can be that, "as a trial tactic, counsel did not wish to remind the jury of those matters." *Webb*, 995 S.W.2d at 300–01; *see also Cueva v. State*, 339 S.W.3d 839, 875 (Tex. App.—Corpus Christi 2011, pet. ref'd) ("[C]ounsel may have had a legitimate belief that requesting further relief would have only highlighted the objectionable testimony.").

Here, on direct examination, the State asked Ozoh how her business relationship with appellant started. Ozoh testified that appellant owned a medical supply company and that he had been having difficulties with one of his employees. She stated that appellant told her that he and the employee "had a big altercation in the office and police came and that he almost hit her and—." At this point, defense counsel objected, and the trial court sustained the objection. Defense counsel did not request a limiting instruction, and the State moved on and asked Ozoh whether appellant told her what kind of business he would like to open. The State and Ozoh did not engage in any further discussion about the "altercation" with the prior employee.

Appellant did not move for a new trial, and, thus, the record is silent on defense counsel's reasons for not requesting a limiting instruction after this exchange. It is reasonable to conclude, however, that, after the trial court sustained the objection, defense counsel decided that seeking an instruction to disregard

Ozoh's testimony would only bring further attention to it. *See Webb*, 995 S.W.2d at 301 ("[A]ppellant's trial counsel may have purposely decided not to request a limiting instruction to prevent further attention being drawn to the extraneous offenses."); *see also Bryant*, 282 S.W.3d at 168 ("[I]f the appellate court can imagine a strategic motive to explain the ineffective assistance claim, then the reviewing court may not sustain the appellant's point of error."). On this record, we cannot conclude that defense counsel's failure to request a limiting instruction concerning this evidence fell below an objective standard of reasonableness. *See Thompson*, 9 S.W.3d at 813 (holding that record must affirmatively demonstrate alleged ineffectiveness).

On cross-examination of appellant, the following exchange occurred:

| [State]: | Do you remember threatening Ms. Ozoh by emulating a gun and telling her that if anything happens to you— |
| --- | --- |
| [Defense counsel]: | Objection. |
| Appellant: | That's not true. |
| [Defense counsel]: | It's out of character and— |
| The Court: | That's not a legal objection. Overruled. |
| [State]: | Do you remember emulating a gun and telling her that if anything happened to you, you're going to kill her and you're going to kill Ms. Caldwell? |
| Appellant: | It's all allegation. That is not true. |

Contrary to appellant's representation on appeal, the trial court did not sustain an objection to evidence concerning alleged threats that appellant made to Ozoh.[4]

On appeal, appellant states only that defense counsel "failed to request an instruction for the jury to disregard this evidence," but he does not acknowledge that the trial court overruled his objection to this evidence, and he did not seek a limiting instruction. He also makes no argument that a limiting instruction would have even been proper with respect to this testimony. He does not demonstrate how the evidence was admissible for one purpose but not another, thus justifying the use of a limiting instruction. We therefore conclude that appellant has not met his burden of demonstrating, by a preponderance of the evidence, that defense counsel rendered ineffective assistance when he failed to request a limiting

---

[4] In the "factual basis" section for his ineffective assistance claims, appellant cites this testimony, but he does not indicate that the trial court overruled his objection. In the section containing his argument for why counsel was deficient, he states that defense counsel "properly objected to . . . prior threats directed toward Eucharia Ozoh, yet defense counsel failed to request an instruction for the jury to disregard this evidence." He cites to the record, but these citations refer to two different portions of testimony in which the trial court sustained defense counsel's objections—one during Caldwell's testimony concerning a conversation she had with one of appellant's friends about dropping the charges and the other during Ozoh's testimony about a conversation she had with appellant's attorney. Appellant references these two objections again in his reply brief, stating, "Nor did the prosecution [in its appellate brief] discuss the failure to request a limiting instruction related to two other objections which were sustained," but he never provides the context for those other objections, nor does he provide any argument for why, with respect to those two objections, defense counsel rendered ineffective assistance when he did not request a limiting instruction. He also does not provide any argument for how he was prejudiced by this failure. *See* TEX. R. APP. P. 38.1(i) ("The brief must contain a clear and concise argument for the contentions made, with appropriate citations to authorities and to the record.").

instruction concerning these threats. *See Perez*, 310 S.W.3d at 893 ("The defendant bears the burden of proving ineffectiveness by a preponderance of the evidence.").

We overrule appellant's sixth, seventh, eighth, and ninth issues.

## Modification of Judgment

In his tenth issue, appellant contends that the trial court erroneously included an affirmative finding of family violence in the judgment for cause number 1767859, relating to the assault on Caldwell. He requests that we modify the judgment to delete this finding. In its sole cross-point, the State contends that the written judgment for cause number 1767858, the assault on Ozoh, reflects a fine of $500, but the trial court orally pronounced a fine of $1,000. The State requests that we modify the judgment to reflect the $1,000 fine.

Rule of Appellate Procedure 43.2(b) allows an appellate court to "modify the trial court's judgment and affirm it as modified." TEX. R. APP. P. 43.2(b). An appellate court has the power to reform a trial court judgment to "make the record speak the truth when the matter has been called to its attention by any source." *French v. State*, 830 S.W.2d 607, 609 (Tex. Crim. App. 1992) (citing *Asberry v. State*, 813 S.W.2d 526, 531 (Tex. App.—Dallas 1991, pet. ref'd)).

## A. *Removal of Family Violence Finding*

Code of Criminal Procedure article 42.013 provides that if the trial court "determines that the offense involved family violence, as defined by Section 71.004, Family Code, the court shall make an affirmative finding of that fact and enter the affirmative finding in the judgment of the case." TEX. CODE CRIM. PROC. ANN. art. 42.013 (Vernon 2006); *Butler v. State*, 189 S.W.3d 299, 302 (Tex. Crim. App. 2006) ("[T]he trial court is statutorily obligated to enter an affirmative finding of family violence in its judgment, if during the guilt phase of trial, the court determines that the offense involved family violence as defined by Tex. Fam. Code § 71.004(1)."); *Thomas v. State*, 150 S.W.3d 887, 889 (Tex. App.—Dallas 2004, pet. ref'd) ("[T]he trial court had no discretion in entering a family violence finding once it determined the offense involved family violence."). Family Code section 71.004 defines "family violence" as including "an act by a member of a family or household against another member of the family or household that is intended to result in physical harm, bodily injury, assault, or sexual assault . . . but does not include defensive measures to protect oneself." TEX. FAM. CODE ANN. § 71.004(1) (Vernon 2008). The Family Code further defines "household" as a "unit composed of persons living together in the same dwelling, without regard to whether they are related to each other." *Id.* § 71.005 (Vernon 2008).

The State contends that the family violence finding is proper, despite the undisputed evidence that Caldwell was not a member of appellant's family or household, because this offense "only occurred in an attempt to further appellant's family violence assault on Ms. Ozoh" and "the offense as a whole was committed with the intent to cause physical harm or threaten physical harm to his household member, Ms. Ozoh." We disagree.

The Texas Legislature began enacting harsher penalties for defendants convicted of multiple domestic assaults in 1989, when it added language to Penal Code section 22.01 similar to the language currently found in section 22.01(b)(2), which enhances the offense of assault from a Class A misdemeanor to a third-degree felony if the assault is committed against a family or household member and the defendant has previously been convicted of an offense against someone with whom the defendant has a specified relationship, as defined by the Family Code. *See* TEX. PENAL CODE ANN. § 22.01(b)(2) (Vernon 2011); *State v. Eakins*, 71 S.W.3d 443, 444 (Tex. App.—Austin 2002, no pet.). The Legislature then adopted article 42.013, requiring the affirmative finding in the written judgment, several years later. *Eakins*, 77 S.W.3d at 444. In *Eakins*, the Austin Court of Appeals reasoned,

> Article 42.013 was obviously intended to simplify the prosecution of
> subsequent family assault cases by making it unnecessary to relitigate
> the details of the previous assault. Instead, the State may rely on the

38

affirmative finding in the prior judgment to prove that the *victim of the defendant's previous assault was a family member*.

*Id.* (emphasis added). The focus of the family-violence finding is thus on the relationship between the defendant and the specific victim of the offense. If the victim of the specific offense is a member of the defendant's family or household, then the affirmative finding is justified. *See* TEX. CODE CRIM. PROC. ANN. art. 42.013; TEX. FAM. CODE ANN. § 71.004(1) (defining "family violence" as "an act by a member of a family or household against *another member of the family or household*") (emphasis added); *Butler*, 189 S.W.3d at 302. The statute is silent on whether a family violence finding is justified when the victim of the specific offense at issue is not a member of the defendant's family or household, but the criminal episode as a whole does involve a member of the defendant's household.

The assault on Caldwell and the assault on Ozoh are separate and distinct offenses, subjecting appellant to separate punishments.[5] The State cites no authority for the proposition that the term "offense" in article 42.013 should be

---

[5] The respective informations for the two offenses illustrate this point. The information in cause number 1767858, the assault on Ozoh, alleges that appellant "did then and there unlawfully intentionally and knowingly cause bodily injury to EUCHARIA OZOH, *a member of the Defendant's household*, hereafter styled the Complainant . . . ." (Emphasis added.) The information in cause number 1767859, the assault on Caldwell, alleges that appellant "did then and there unlawfully intentionally and knowingly cause bodily injury to BRENETHA CALDWELL, hereinafter called the Complainant . . . ."

39

read as "criminal episode" instead of as a discrete violation of the Penal Code. We decline to read this meaning into the statute here.

The State also contends that the family violence finding was proper based on the doctrine of transferred intent, arguing that "[w]hile [appellant] was directing an assault on his household member, Ms. Ozoh, he attacked Ms. Caldwell when she intervened. His intent had been to commit family violence, and in the process, he also assaulted Ms. Caldwell because she attempted to protect Ms. Ozoh." We are not persuaded by this argument. The doctrine of transferred intent, as codified by the Legislature in Penal Code section 6.04, allows "a transfer of intent in circumstances where the difference between what was intended, contemplated, and risked and what occurred is either a different victim, or where there is a discrepancy between the degree of harm intended and that actually produced . . . ." George E. Dix & John M. Schmolesky, *Texas Practice Series: Criminal Practice and Procedure* § 43.17 (3d ed.); *see also* TEX. PENAL CODE ANN. § 6.04 (Vernon 2011) (codifying doctrine of transferred intent). The situation in this case is not a situation in which there is a difference between appellant's intended victim and his actual victim. He intended to assault Ozoh, a member of his household, and he so assaulted her by hitting her, knocking her down, and kicking her. When Caldwell attempted to intervene and protect Ozoh, he intended to assault Caldwell to prevent

her interference, and he so assaulted her by hitting her with his fist. The transferred intent doctrine is thus inapplicable under these circumstances.

We agree with appellant that the record does not support the affirmative family violence finding in cause number 1767859, the assault on Caldwell, and we therefore modify the judgment of the trial court to delete that finding.

We sustain appellant's tenth issue.

## B.    Correction of Fine Amount

A defendant's sentence must be pronounced orally in his presence. *Taylor v. State*, 131 S.W.3d 497, 500 (Tex. Crim. App. 2004) (citing TEX. CODE CRIM. PROC. ANN. art. 42.03, § 1(a) (Vernon Supp. 2012) and *Ex parte Madding*, 70 S.W.3d 131, 135 (Tex. Crim. App. 2002)). The judgment, including the assessed sentence, is "just the written declaration and embodiment of that oral pronouncement." *Id.* When there is a conflict between the oral pronouncement of sentence and the sentence in the written judgment, the oral pronouncement controls. *Id.* "The solution in those cases in which the oral pronouncement and the written judgment conflict is to reform the written judgment to conform to the sentence that was orally pronounced." *Thompson v. State*, 108 S.W.3d 287, 290 (Tex. Crim. App. 2003); *Davis v. State*, 323 S.W.3d 190, 198–99 (Tex. App.— Dallas 2008, pet. ref'd) (modifying written judgment to include $1,500 fine orally

41

pronounced and noting that appellate court has authority to modify incorrect judgment when it has "necessary data and information to do so").

Here, with respect to cause number 1767858, the trial court assessed appellant's punishment as one year confinement in the Harris County Jail, suspended that sentence, and placed him on community supervision for two years. The trial court also assessed a $1,000 fine. The written judgment, however, placed appellant on community supervision for one year and assessed a $500 fine. The oral pronouncement and the written judgment thus conflict, and we therefore reform the judgment in cause number 1767858 to reflect the appropriate length of community supervision—two years—and the appropriate fine—$1,000. *See Rhoten v. State*, 299 S.W.3d 349, 356 (Tex. App.—Texarkana 2009, no pet.) ("Our authority to reform incorrect judgments is not dependent on the request of any party, nor does it turn on a question of whether a party has or has not objected in [the] trial court; we may act sua sponte and may have a duty to do so.").

We sustain the State's sole cross-point.

## Conclusion

We modify the judgment in trial court cause number 1767858, appellate cause number 01-12-00207-CR, to reflect that appellant's term of community supervision is two years and that a $1,000 fine was imposed against him. We modify the judgment in trial court cause number 1767859, appellate cause number

42

01-12-00208-CR, to delete the affirmative family violence finding.  We affirm the judgments as modified.

Evelyn V. Keyes
Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish.  TEX. R. APP. P. 47.2(b).