**Opinion issued November 20, 2014**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-13-00234-CR

_____

**TERRENCE BRENT MCNEIL, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 338th District Court**
**Harris County, Texas**
**Trial Court Case No. 1362563**

---

## CONCURRING OPINION

I join the majority in its analysis of the second and third issues of appellant,

Terrence Brent McNeil. However, because the evidence about which appellant

specifically complains in his first issue does not, as he asserts, constitute evidence

of an extraneous offense, wrong, or bad act, but rather general background

evidence, I concur in the judgment of this Court affirming his conviction of the offense of felony murder.[1]

In his first issue, appellant argues that his trial counsel provided him with ineffective assistance because counsel "fail[ed] to request a limiting instruction and a burden-of-proof instruction on extraneous offenses."

A defendant is "entitled to be tried on the accusations made in the State's pleading and he should not be tried for some collateral crime or for being a criminal generally." *Ex parte Varelas*, 45 S.W.3d 627, 630 (Tex. Crim. App. 2001) (orig. proceeding) (quoting *Wilkerson v. State*, 736 S.W.2d 656, 659 (Tex. Crim. App. 1987)). Thus, generally, evidence of extraneous offenses, wrongs, or bad acts "is not admissible to prove the character of a person in order to show action in conformity therewith." TEX. R. EVID. 404(b). However, it may be admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.*

Once a trial court rules that evidence of an extraneous offense, wrong, or bad act is admissible, it must instruct the jury about the limitation on its use of the extraneous matter if the defendant so requests. *Varelas*, 45 S.W.3d at 631. The Texas Court of Criminal Appeals has also explained that "'when evidence of collateral crimes is introduced for one of the various purposes for which such

---

[1]     *See* TEX. PENAL CODE ANN. § 19.02(b)(3) (Vernon 2011).

evidence becomes admissible, the jury should be instructed that they cannot consider against the defendant such collateral crimes, unless it has been shown to their satisfaction that the accused is guilty thereof.'" *Id.* (quoting *Lankford v. State*, 93 Tex. Crim. 442, 248 S.W. 389, 389 (1923)). In other words, the jury should be instructed that it is not to consider extraneous-offense evidence unless it believes beyond a reasonable doubt that the defendant committed the offense. *Id.*

In support of his argument that his trial counsel provided him ineffective assistance, appellant relies on *Varelas*. In *Varelas*, the State presented evidence that the defendant, before committing the charged offense of capital murder, had committed specific extraneous bad acts against the complainant: he had "excessively dunked [the complainant] in a swimming pool, had 'thumped' the back of her head, had pushed her with his foot, had made her sit still on a couch for over two hours, and had hit her the night before her death." *Id.* at 630. And the State argued "because [appellant] had committed these [extraneous] acts, he must have been the person responsible for [the complainant's] death." *Id.* The defendant's attorneys did not "request that either burden of proof or limiting instructions be included in the guilt/innocence charge regarding these extraneous acts, even though the attorneys noted during pre-trial hearings that such instructions would be proper." *Id.* Noting that "[t]he trial court would have been required to give the instructions had counsel requested them, and reasonable

3

counsel would have requested the instructions given the facts of th[e] case," the court of criminal appeals held that the performance of the defendant's trial counsel was "deficient." *Id.* at 632.

Here, in contrast to the defendant in *Varelas*, appellant's complaint, as presented in his briefing to this Court about his trial counsel's performance, does not actually concern any specific extraneous offense, wrong, or bad act. Rather, appellant complains generally only about the following:

> The extraneous offense evidence started with the first witness, Ruby Cantu, who babysat [the complainant] starting in July of 2010. Ms. Cantu testified that in the first three weeks of child care*, she did not notice any bruises or injuries on the [complainant]*. When Ms. Cantu became ill and called [the complainant's mother] to say she would not be able to care for the [complainant], Ms. Cantu learned that [appellant, the boyfriend of the complaint's mother], would babysit. *Thereafter, Ms. Cantu noticed the [complainant] had become more quiet and withdrawn. She also began to notice ever-more serious bruising.*

> In early September, when Ms. Cantu picked up the [complainant] from [her mother] at [her] workplace, *she noticed bruises on the [complainant's] head and left arm*. She drove [the complainant's mother] and the [complainant] to the hospital. *She learned the next day that the [complainant's] arm was broken. [The mother's] explanation for the [complainant's] injuries did not make sense to Ms. Cantu.* Ms. Cantu photographed the bruises she saw on [the complainant], called Children's Protective Services, and concocted an excuse for telling [the complainant's mother] that she could no longer babysit. This extraneous offense evidence all came before the jury with no objection, and no request for a limiting instruction and burden-of-proof instruction.

> The State also offered evidence of *extraneous acts of injury* to the [complainant] through the testimony of forensic anthropologist Dr.

4

Jennifer Love. The State further bolstered its theory that [appellant] was responsible for the extraneous offenses – and the [complainant's] death – through the testimony of assistant medical examiner Dr. Ana Lopez, and her records.

(Emphasis added) (internal citations omitted.)

In sum, appellant complains that the jury heard evidence that Cantu (1) observed that the complainant became "more quiet and withdrawn" and had "ever-more-serious bruising" after appellant had babysat her in July 2010; (2) observed, after picking up the complainant from her mother on September 7, 2010, that the complainant had bruising on her head and left arm; (3) learned, after driving the complainant and her mother to the hospital, that the complainant's arm had been broken; and (4) did not think the mother's explanation for the complainant's injuries "ma[d]e sense." Characterizing the above evidence as "extraneous offense evidence," appellant complains that it "all came before the jury with no objection, and no request for a limiting instruction and burden of proof instruction." Appellant also generally complains about the testimony of Drs. Love and Lopez about "extraneous acts of injury to the [complainant]." However, while he does provide one record cite for the testimony of each doctor, a review of the portion of the record cited does not reveal any testimony about an extraneous offense, wrong, or bad act committed by appellant.

Although appellant, in his briefing, characterizes the evidence about which he now complains as "extraneous offense evidence," it actually constitutes general

background evidence about previous injuries sustained by the complainant and her mother's, not appellant's, explanations for those injuries. The only portion of Cantu's testimony that actually concerns appellant is her observation that the complainant became "more quiet and withdrawn" and had "ever-more-serious bruising" after appellant had babysat the complainant in July 2010. The bulk of appellant's complaint concerns Cantu's observations of the complainant's injuries in the presence of her mother, not appellant.

As explained by the court of criminal appeals, general background evidence "is admissible, not because it has particularly compelling probative value with respect to the elements of the alleged offense, but simply because it provides the jury with perspective, so that the jury is equipped to evaluate in proper context, other evidence that more directly relates to elemental facts."[2] *Langham v. State*, 305 S.W.3d 568, 580 (Tex. Crim. App. 2010) (emphasis omitted). In other words, it puts the trier of fact "in a better position to evaluate evidence and determine facts for deciding a material proposition after learning the background." PETER T. HOFFMAN, TEXAS RULES OF EVIDENCE HANDBOOK 182 (2011 ed.). General background evidence "thus tends to make the material proposition more or less

---

[2] General background evidence should not be confused with "'same transaction' contextual evidence," which concerns other offenses, wrongs, and bad acts connected to a primary charged offense, or "'background' contextual evidence" that possesses a "character component." *See Mayes v. State*, 816 S.W.2d 79, 86–88 (Tex. Crim. App. 1991).

likely." *Id.* Because it is relevant, it is generally admissible. *See* TEX. R. EVID. 402.

Here, as noted by appellant in his briefing, the complainant and her mother moved to Houston from Alaska, where the mother "left behind a caseworker file due to suspected child neglect and medical evidence of the [complainant's] failure to thrive." Further, the complainant's mother was also "charged in connection with the death" of the complainant. Importantly, as noted by appellant, "[n]o one testified to having seen [him] abuse or injure" the complainant, and his trial counsel "offered medical records to show the [complainant's] extensive medical history – including treatment for neglect and failure to thrive – and medical problems that existed from birth."

Indeed, trial counsel actually used the evidence regarding the complainant's other injuries and her mother's neglectful care to argue to the jury that, although appellant had admitted that he had "probably" broken the complainant's arm on September 7, 2010 and injured her on the date of her death,

> somebody else was there in that house, too. And you've heard about her and what happened and what she was like. I didn't make up those references to neglect when [the complainant] was barely out of the womb. How many children do you know have CPS care workers at less than a year old?

Trial counsel also used the evidence regarding the complainant's other injuries to argue to the jury that the complainant was a "fragile" child and, thus, when

appellant injured her on the date of her death, "[h]e was reckless, he was negligent, and he was wrong," but he did not intentionally injure the complainant and cause her death.

The evidence about which appellant specifically complains in his briefing to this Court does not concern any specific extraneous offense, wrong, or bad act committed by him which would warrant limiting and burden-of-proof instructions. Accordingly, I would hold that appellant has not established that his trial counsel's performance was deficient for failure to request such instructions. *See Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984). In contrast, the majority holds that appellant has not established that his trial counsel's performance was deficient because "trial counsel's strategy here is expressly reflected in the record, which demonstrates that counsel chose to omit a request for inclusion of extraneous-offense instructions because he did not want any further attention to be drawn to potential extraneous offenses or misconduct committed by the defendant."

As noted by the majority, both the court of criminal appeals and this Court have stated that an attorney's intentional omission of limiting and burden-of-proof instructions from a jury charge might be considered reasonable trial strategy. *See Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) ("[T]he decision of whether to request a limiting instruction concerning the proper use of certain

evidence, including extraneous offenses, may be a matter of trial strategy"); *Agbogwe v. State*, 414 S.W.3d 820, 838 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("It is reasonable to conclude . . . [that] defense counsel decided that seeking an instruction to disregard [extraneous offense] testimony would only bring further attention to it.").

However, it appears readily apparent that such a "trial strategy," as a matter of law, should not be considered reasonable and sound at the guilt phase of a criminal trial. Indeed, if a jury is not properly instructed that it may only consider evidence that a defendant committed an extraneous offense, wrong, or bad act for a limited purpose, and not to prove the character of the defendant "to show action in conformity therewith," then the jury may in fact consider the extraneous offense evidence for the improper purpose of establishing action in conformity with character. Moreover, if the jury is not further instructed that it may consider such evidence only if it believes beyond a reasonable doubt that the defendant committed the extraneous offense, wrong, or bad act, then the jury may actually consider the evidence, even if it does not believe beyond a reasonable doubt that the defendant committed the extraneous offense. In effect, the so-called "strategy" of not requesting a burden-of-proof instruction for evidence of extraneous offense, wrongs, and bad acts actually relieves the State of its burden of proof. Thus, the

9

failure to request the proper limiting and burden-of-proof instructions for evidence of extraneous offense, wrongs and bad acts, in reality, constitutes a guilty plea.

Regardless, as discussed above, we need not reach the issue in this case.

Terry Jennings
Justice

Panel consists of Chief Justice Radack and Justices Jennings and Keyes.

Jennings, J., concurring.

Publish.  TEX. R. APP. P. 47.2(b).