**Opinion issued July 7, 2016**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-15-00493-CR

_____

**RODRICK ODELL WILLIAMS, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 180th District Court**
**Harris County, Texas**
**Trial Court Case No. 1373609**

---

## MEMORANDUM OPINION

A jury convicted appellant, Rodrick Odell Williams, of murder and assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In two points of error, appellant contends that the

trial court abused its discretion by (1) admitting extraneous offense evidence because the State failed to provide notice of its intention to offer the evidence as required by Code of Criminal Procedure article 37.07, and (2) denying his request to include a sudden passion instruction in the jury charge. We affirm.

## Background

Shortly after 6:00 a.m. on January 1, 2013, Houston Police Department Officer Hunter was dispatched to a shooting in the 9600 block of Bissonnet, near Cube's Sports Bar and Ballers, two after-hour nightclubs. When Officer Hunter arrived, he observed paramedics attending to a man lying on the ground and later identified as the complainant, Damon Romel Williams, whom paramedics pronounced as dead. An autopsy later revealed that Williams had been shot ten times.

At trial, Katerina Gutierrez testified that she and a friend went to Cube's just before midnight on December 31, 2012. While there, Gutierrez started talking with appellant whom she knew by the nickname "Memphis." Gutierrez testified that she saw appellant and the complainant start arguing but then left the bar and went outside. The complainant and appellant left the bar shortly afterwards when Gutierrez saw appellant run up behind the complainant and shoot him. Gutierrez testified that she heard five or six shots. Gutierrez later identified appellant in a photo array as the shooter.

2

Frank Medina, an employee at Cube's, testified that he saw appellant who he knew as "Memphis" at the bar in the early morning of January 1, 2013. Medina testified that appellant and the complainant began arguing and pushing each other whereupon two bouncers escorted them outside. According to Medina, the altercation was "a little bickering, a little pushing, a little shoving, but nothing major," and that neither appellant nor the complainant became physical or had to be "manhandled" by the bouncers but "[t]hey just took it as, okay, we got to go." Medina testified that when the complainant began to walk away from appellant, appellant went to his car, opened the trunk, and removed a gun. Medina then saw appellant shoot the complainant approximately four or five times. Medina testified that appellant then got in his car, drove around the parking lot, exited his car, and shot the complainant several more times as he lay on the ground. Medina later identified appellant in a photo line-up as the shooter.

Clyde Benjamin, a TDCJ inmate at the time of trial, testified that on January 10, 2013, while he was at the Harris County jail awaiting processing, he recognized appellant whom he knew as "Memphis." Appellant had been arrested during a traffic stop earlier that day. When Benjamin asked appellant why he was in jail, appellant told him that it was for "dumping on someone" who had disrespected him in a bar, which Benjamin testified is slang for shooting someone until the clip is empty.

Appellant presented two witnesses, Adam Daniels and Willie Jobe. Daniels and Jobe testified that they saw the complainant get shot in the parking lot outside the nightclubs and that appellant was not the shooter.

At the conclusion of the guilt-innocence phase of the trial, the jury found appellant guilty of the charged offense.

During the punishment phase, Officer Trevino testified about the traffic stop that led to appellant's arrest. Trial counsel objected to the State eliciting any testimony related to the discovery of the pistol and marijuana under the hood of appellant's vehicle during the stop. Trial counsel acknowledged "I am aware of [the extraneous evidence] and it's in the police report, we have even talked about it," but objected to its admission on the ground that the State had failed to provide notice as required under Code of Criminal Procedure article 37.07. After the trial court overruled the objection, Officer Trevino testified about discovery of the pistol.

The State also sought to introduce photographs from appellant's Facebook page depicting appellant holding a firearm. Trial counsel again objected on the ground that the State had not provided him with written notice pursuant to article 37.07. The State responded that counsel had been aware of the photos for a long time, and counsel admitted that the State had previously shared the photographs with him. The trial court overruled the objection and the photos were admitted.

Reginald Williams, appellant's father, and Robert Harper, appellant's minister, testified on behalf of the defense. At the conclusion of the punishment hearing, trial counsel informed the court that the State had just given him a list of appellant's numerous prior convictions in Tennessee, which included convictions for aggravated assault and drug-related offenses, on the morning of the hearing and that he had not known about these offenses prior to that moment. Trial counsel then stated,

> The State acknowledged that was not part of their written notice, but indicated that they intend to offer those through, Did-you-know or have-you-heard type cross-examination questions if I presented any what we will call character witnesses on behalf of the defendant.

> Therefore, it is my clear trial strategy to not put on two witnesses, meaning Bianca Horton [appellant's girlfriend] and his mother Tane Burrus, that I limited some of the questioning to Robert Harper, the minister, and also his father, Reginald Williams, because the worst thing that I could do for this defendant is to open the door that will allow the State to get in any of those priors.

Trial counsel did not offer the two witnesses and the State did not attempt to introduce the Tennessee convictions. The jury assessed appellant's punishment at confinement for life. This appeal followed.

## Extraneous Offense Evidence

In his first point of error, appellant contends that the trial court abused its discretion in overruling appellant's objection under article 37.07 because the State failed to provide reasonable notice of its intention to offer extraneous offense

evidence during the punishment phase. Specifically, he complains that the State did not provide reasonable notice of its intent to introduce evidence of (1) the marijuana and pistol found during the search of appellant's vehicle, (2) photographs from appellant's Facebook page showing him holding a gun, and (3) appellant's numerous prior convictions in Tennessee.

## A. Standard of Review and Applicable Law

We review the admission of extraneous offenses and bad acts for an abuse of discretion. *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005). We will reverse the trial court's decision only when it is so clearly wrong that it is outside "the zone of reasonable disagreement." *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

The admissibility of evidence at the punishment phase of trial is governed by Article 37.07, § 3(a)(1), which provides, in relevant part:

> Regardless of the plea and whether the punishment be assessed by the judge or the jury, evidence may be offered by the state and the defendant as to any matter the court deems relevant to sentencing, including but not limited to the prior criminal record of the defendant, his general reputation, his character, an opinion regarding his character, the circumstances of the offense for which he is being tried, and, notwithstanding Rules 404 and 405, Texas Rules of Evidence, any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

6

TEX. CODE CRIM. PRO. ANN. Art. 37.07, § 3(a)(1) (West Supp. 2015). Section 3(g) further provides that "[o]n timely request of the defendant, notice of intent to introduce evidence under this article shall be given in the same manner required by Rule 404(b), Texas Rules of Evidence." *See id.* § 3(g).

"The purpose of the notice requirement is to enable the defendant to prepare to meet the extraneous offense evidence." *Roethel v. State*, 80 S.W.3d 276, 282 (Tex. App.—Austin 2002, no pet.) (op. on reh'g). Any deficiency in notice is analyzed on how it affected a defendant's "ability to prepare for the evidence." *Id.*; *see also Nance v. State*, 946 S.W.2d 490, 492 (Tex. App.—Fort Worth 1997, pet. ref'd) (explaining notice requirement avoids unfair surprise and trial by ambush). However, the notice required under Rule 404(b) does not have to be provided in written form. *See Agbogwe v. State*, 414 S.W.3d 820, 836 (Tex. App.—Houston [1st Dist.] 2013, no pet.) (noting that although written Rule 404(b) notice provided did not include certain extraneous acts, Rule 404(b) does not require that notice be in writing); *Blackmon v. State*, 80 S.W.3d 103, 108 (Tex. App.—Texarkana 2002, pet. ref'd). The reasonableness of the notice turns on the facts and circumstances of each case. *Segovia v. State*, 467 S.W.3d 545, 553–54 (Tex. App.—San Antonio 2015, pet. ref'd); *Patton v. State*, 25 S.W.3d 387, 392 (Tex. App.—Austin 2000, pet. ref'd).

Admitting evidence of extraneous offenses when the State has not provided proper notice is non-constitutional error, subject to harm analysis under Texas Rule of Appellate Procedure 44.2(b). *McDonald*, 179 S.W.3d at 578; TEX. R. APP. P. 44.2(b). An appellate court may reverse a judgment of conviction or punishment based on non-constitutional error only if that error affected the defendant's substantial rights. TEX. R. APP. P. 44.2(b). A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict. *See Motilla v. State*, 78 S.W.3d 352, 355 (Tex. Crim. App. 2002).

When a defendant objects to the admissibility of extraneous acts based exclusively on the State's failure to give proper notice, reviewing courts "look only at the harm that may have been caused by the lack of notice and the effect the lack of notice had on the [defendant's] ability to mount an adequate defense." *McDonald*, 179 S.W.3d at 578; *see also Roethel*, 80 S.W.3d at 281–82 (noting that purpose of article 37.07's notice requirement is to enable defendant to prepare to meet extraneous offense evidence, and that harm is assessed in view of whether statute's purpose was thwarted). Specifically, we consider whether the lack of reasonable notice surprised the defense. *Hernandez v. State*, 176 S.W.3d 821, 823–25 (Tex. Crim. App. 2005) (citing with approval *Roethel*, 80 S.W.3d at 281–82). "A defendant may demonstrate surprise by showing how his defense strategy might have been different had the State explicitly notified him that it intended to offer the

8

extraneous-offense evidence." *Allen v. State*, 202 S.W.3d 364, 369 (Tex. App.—

Fort Worth 2006, pet. ref'd) (discussing Rule 404(b) notice) (citing *Hernandez*, 176

S.W.3d at 826).

**B. Analysis**

On September 7, 2014, appellant timely requested notice of the State's intent

to introduce extraneous offense evidence and evidence of prior criminal convictions.

The State notified appellant that it intended to offer evidence regarding appellant's

membership in the Gangster Disciple Criminal Street gang.[1]

*1. Gun, marijuana, and Facebook photos*

During the State's questioning of Officer Trevino regarding the traffic stop

that led to appellant's arrest, trial counsel objected to the State eliciting any

testimony regarding the gun and marijuana discovered under the hood of appellant's

vehicle. Trial counsel acknowledged "I am aware of [the extraneous evidence] and

it's in the police report, we have even talked about it," but objected to its admission

on the ground that the State had failed to provide written notice. When the State

sought to introduce photographs from appellant's Facebook page depicting him

holding a firearm, trial counsel again objected to the lack of written notice. The

State responded that trial counsel "has been aware of [the photos] for a long time,"

---

[1]     We note that these pleadings do not appear in the clerk's record. However, appellant has attached a copy of the documents, reflecting that they were filed with the district clerk's office on September 7, 2014, in the appendix to his brief.

and counsel admitted that he was familiar with the photos and that the prosecutor had previously shared the photos with him. The trial court overruled the objections.

The purpose of article 37.07, section 3(g) is to avoid unfair surprise, that is, trial by ambush. *Nance*, 946 S.W.2d at 493. Here, the record demonstrates that the prosecutor discussed the pistol, marijuana, and Facebook photos with counsel before trial, and that counsel acknowledged to the court that he had actual notice of the evidence. *See Agbogwe*, 414 S.W.3d at 836 (noting that Rule 404(b) does not require that notice be in writing); *see also Barnstein v. State*, No. 02-04-442-CR, 2006 WL 59400, at *7 (Tex. App.—Fort Worth Jan. 12, 2006, pet. ref'd) (mem. op., not designated for publication) (concluding trial court did not abuse its discretion when it determined that State had provided reasonable notice to defense of its intent to introduce extraneous bad acts where record showed prosecutor had provided oral notice to trial counsel and offense report included information regarding extraneous offenses). Further, we note that the State did not elicit any testimony from Officer Trevino regarding the marijuana. The trial court did not abuse its discretion in determining that the State provided appellant with reasonable notice of its intent to introduce evidence regarding the gun, marijuana, and Facebook photos.

### 2. *Tennessee convictions*

Appellant also complains that the State failed to provide reasonable notice of its intent to introduce evidence of his numerous prior convictions in Tennessee.

At the punishment hearing, trial counsel called appellant's father and appellant's minister to testify on behalf of the defense. At the conclusion of the hearing, counsel informed the court that the State had only provided him a written list of appellant's numerous prior convictions in Tennessee on the morning of the hearing, which included felony convictions for aggravated assault and drug-related offenses. Counsel informed the court that, as a result of the deficient notice, his trial strategy was to not call two witnesses and that he had limited his examination of the other two witnesses.

Appellant argues on appeal that the State's failure to provide reasonable notice and its expressed intention to use the Tennessee convictions to impeach his witnesses thwarted presentation of his defense because he did not call two witnesses and limited his examination of the two he did call in order to not "open the door" to those prior convictions.[2]

A review of the record reveals that the State did not introduce the Tennessee convictions at the punishment hearing, and therefore, counsel did not object to their admission and the trial court did not rule on their admissibility.[3] Consequently, there

---

[2]    The State does not address appellant's argument regarding the Tennessee convictions in its brief.

[3]    The written list of appellant's prior Tennessee convictions about which appellant complains are not part of the record before us. However, the record reflects that counsel informed the court that the State had provided a list of appellant's Tennessee convictions on the morning of the hearing, and the State did not dispute the

11

is no trial court ruling before us to review. We also note that, other than a general assertion that he "could have prepared a different defense for punishment, or could have simply prepared those witnesses for the questions they were likely to face," trial counsel made no proffer as to what his witnesses' testimony *would* have been had they testified or how he *would* have modified his trial strategy had he been provided reasonable notice of the State's intent to introduce the convictions. Further, the record does not reflect that trial counsel requested a continuance or recess to prepare the witnesses for the State's questions.

In *Luce v. United States*, the United States Supreme Court addressed a similar situation where a defendant claimed that his rights had been infringed upon when the Government's threat to use a prior conviction for impeachment purposes kept him from testifying. 469 U.S. 38, 40, 105 S. Ct. 460, 462 (1984). The Court held that the issue was waived because the defendant did not testify, thereby depriving the appellate courts of a record on which to make a ruling. *See id*. at 43, 105 S. Ct. at 464.

> A reviewing court is handicapped in any effort to rule on subtle evidentiary questions outside a factual context. This is particularly true

---

statement. We therefore assume that the State provided written notice of these convictions on the morning of the hearing, as contended by appellant. *See Hayden v. State*, 66 S.W.3d 269, 273 (Tex. Crim. App. 2001) (noting courts accept as true factual assertions made by counsel at trial which could have been, but were not, disputed by opposing counsel).

under Rule 609(a)(l),[4] which directs the court to weigh the probative value of a prior conviction against the prejudicial effect to the defendant. To perform this balancing, the court must know the precise nature of the defendant's testimony, which is unknowable when, as here, the defendant does not testify.

*Id.* at 41, 105 S. Ct. at 463. The Texas Court of Criminal Appeals used the same reasoning and cited *Luce* when confronted with the case of a defendant claiming error when he declined to testify in the punishment phase of a trial because of the threat of impeachment with a prior conviction. *Jackson v. State*, 992 S.W.2d 469, 479–80 (Tex. Crim. App. 1999).

Given the record before us, we would be forced to speculate about (1) the precise nature of the witnesses' testimony; (2) whether the State would have sought to introduce the evidence through cross-examination of the witnesses; (3) whether the trial court would have allowed the State to introduce it or excluded it based on the State's lack of reasonable notice; and (4) whether any resulting error in permitting the extraneous evidence would have been harmless. *See Jackson*, 992 S.W.2d at 479–80; *see also Washington v. State*, No. 14–13–00818–CR, 2015 WL 2250628, at *2 (Tex. App.—Houston [14th Dist.] July 15, 2015, pet. dism'd) (mem. op., not designated for publication). We cannot make a ruling based on speculation. Appellant failed to preserve error with regard to the Tennessee convictions.

---

[4]     Texas Rule of Evidence 609 was derived from the federal corollary rule. *Theus v. State*, 845 S.W.2d 874, 879 (Tex. Crim. App. 1992).

We emphasize that this conclusion is controlled by the facts of this case. The State should not take this opinion as license to ignore the Legislature's mandate that the State provide reasonable notice of its intent to introduce extraneous offense evidence. *See Roethel*, 80 S.W.3d at 283. To protect the fundamental fairness of our system, defendants must be permitted to determine what allegations they will be required to defend themselves against during trial. *Nance*, 946 S.W.2d at 492. As previously stated, the clear purpose of article 37.07, section 3(g) is to avoid unfair surprise and trial by ambush. *Id.* Providing notice to trial counsel on the morning of the punishment hearing of its intention to introduce numerous prior out-of-state felony convictions through cross-examination of defense witnesses undeniably defeats this purpose and, on a slightly different record, could have required this case to be remanded for another punishment hearing.

We overrule appellant's first point of error.

### Sudden Passion Instruction

In his second point of error, appellant argues that the trial court abused its discretion by overruling his objection to the jury charge and his request that a sudden passion instruction be included in the charge.[5]

---

[5] Although appellant frames his point of error as a complaint about the trial court's failure to instruct the jury on the lesser-included offense of second-degree murder, a review of the record below and his brief makes clear that he is actually complaining about the trial court's denial of his request for a sudden passion instruction.

14

## A.    Standard of Review and Applicable Law

We use a two-step process in reviewing jury charge error.  *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)).  If we first determine that error exists in the charge, we then review the record to determine whether the error caused sufficient harm to require reversal of the conviction.  *Wooten*, 400 S.W.3d at 606.

At the punishment stage of a murder trial, a defendant may argue that he caused the death while under the immediate influence of sudden passion arising from an adequate cause.  *Trevino v. State*, 100 S.W.3d 232, 237 (Tex. Crim. App. 2003).  Sudden passion is a mitigating circumstance that, if found by the jury to have been proven by a preponderance of the evidence, reduces the offense from a first-degree felony with a punishment range of five to ninety-nine years' imprisonment to a second-degree felony with a punishment range of two to twenty years.  TEX. PENAL CODE ANN. §§ 12.32(a), 12.33(a), 19.02(d) (West 2011).  A defendant is entitled to a jury instruction on the issue of sudden passion if the record, at a minimum, supports an inference that (1) the defendant in fact acted under the immediate influence of a passion such as terror, anger, rage, or resentment; (2) his sudden passion was in fact induced by some provocation by the deceased or another acting with him, which provocation would commonly produce such a passion in a person of ordinary temper; (3) he committed the murder before regaining his capacity for cool

reflection; and (4) a causal connection existed "between the provocation, passion, and homicide." *Wooten*, 400 S.W.3d at 605 (quoting *McKinney v. State*, 179 S.W.3d 565, 569 (Tex. Crim. App. 2005)); *see also* TEX. PENAL CODE ANN. § 19.02(a)(1)–(2) (West 2011) (defining sudden passion and adequate cause).[6]

In considering whether any evidence was raised on this punishment issue, we review the record from both the guilt-innocence and punishment phases of the trial. *Trevino*, 100 S.W.3d at 238. We review evidence offered in support of a defensive issue in the light most favorable to the defense. *See Griffin v. State*, 461 S.W.3d 188, 192 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Granger v. State*, 3 S.W.3d 36, 38 (Tex. Crim. App. 1999)). However, "[t]he mere fact that a defendant acts in response to the provocation of another is not sufficient to warrant a charge on sudden passion. Instead, there must be some evidence that the defendant was under the immediate influence of sudden passion." *Trevino*, 100 S.W.3d at 241.

## B.     Analysis

Appellant argues that he was entitled to have a sudden passion instruction submitted to the jury because there was more than a scintilla of evidence to support

---

[6]     Sudden passion is defined as "passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation." TEX. PENAL CODE ANN. § 19.02(a)(2) (West 2011). Adequate cause means "cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection." *Id.* § 19.02(a)(1).

his requested charge. Specifically, appellant points to Medina's testimony that appellant and the complainant were arguing in the bar, they had to be escorted outside by bouncers, appellant and the complainant continued their argument outside, and that whatever the subject of the argument, it was sufficient to cause appellant to circle the parking lot, return to the complainant, and shoot him several more times. Appellant also relies on Benjamin's testimony that appellant told him that he was in jail because he had "dumped" on someone who had disrespected him in a club.

The record reveals that Medina described the altercation as "a little bickering, a little pushing, a little shoving, but nothing major." He testified that when the bouncers escorted appellant and the complainant out of the bar, neither appellant nor complainant became physical or had to be "manhandled," but "[t]hey just took it as, okay, we got to go." This evidence does not demonstrate the anger, rage, or resentment required to establish sudden passion. *See Dukes v. State*, ___ S.W.3d ___, 2016 WL 828106, at *6 (Tex. App.—Houston [1st Dist.] Mar. 3, 2016, no pet. h.) (noting sudden passion is extreme emotional and psychological state and that ordinary anger does not justify sudden passion instruction); *Willis v. State*, 936 S.W.2d 302, 305 (Tex. App.—Tyler 1996, writ ref'd) (concluding issue of sudden passion arising from adequate cause was not raised where defendant was having argument with victim, victim walked away and broke out windows of defendant's

17

car, and defendant then left and retrieved gun from his room, returned, and shot victim repeatedly in back). Although Benjamin testified that appellant told him that he "dumped" on someone who had disrespected him at a club, there is no testimony as to what the complainant allegedly said to appellant and, therefore, no evidence showing whether the complainant's remarks were of a kind that would make an ordinary person's mind incapable of cool refection. *See Dukes*, 2016 WL 828106, at \*6. Finally, Medina's testimony that after the complainant began to walk away from appellant, appellant went to his car, opened the trunk, removed a gun, and shot the complainant does not show that appellant was angry to the degree that he was incapable of cool reflection but rather reveals a deliberate, reflective action by appellant. *See Saldivar v. State*, 980 S.W.2d 475, 505–06 (Tex. App.—Houston [14th Dist.] 1998, pet. ref'd) (concluding defendant who became enraged after victim divulged that victim's father had accused defendant of embezzlement and lesbianism and killed victim as she turned and began walking towards door was not entitled to sudden passion charge); *Tronsco v. State*, No. 06-03-00065-CR, 2004 WL 573659, at \*9 (Tex. App.—Texarkana Mar. 24, 2004, pet. ref'd) (mem. op., not designated for publication) (finding defendant's testimony that he obtained machete from his truck after victim had kicked him, struck victim with machete, and then when he perceived another threat from victim, obtained knife and stabbed victim showed deliberate, reflective action).

18

Because we find no evidence raising an issue that appellant shot the complainant under the immediate influence of a sudden passion arising from an adequate cause, the trial court did not err in overruling his objection to the jury charge and his requested instruction on the issue. *See Saldivar*, 980 S.W.2d at 506. Accordingly, we overrule appellant's second point of error.

## Conclusion

We affirm the trial court's judgment.


Russell Lloyd
Justice


Panel consists of Chief Justice Radack and Justices Jennings and Lloyd.

Radack, C.J., concurring in judgment only, without separate opinion.

Do not publish.   TEX. R. APP. P. 47.2(b).