**Opinion issued June 21, 2018**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-17-00297-CR

———————————

**ERIC ANDREW MARTINEZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 232nd District Court**
**Harris County, Texas**
**Trial Court Case No. 1459005**

---

## MEMORANDUM OPINION

A jury convicted Eric Andrew Martinez of murder, and sentenced him to confinement for 30 years. *See* TEX. PENAL CODE §§ 19.02(b)(1)–(2). In two issues, Martinez contends that (1) his trial counsel rendered ineffective assistance in failing to request manslaughter and extraneous offense jury instructions, and (2) the

statutory fees assessed against him for summoning witnesses/mileage are unconstitutional as applied to him. Because Martinez has not shown that his counsel was ineffective or that the fees assessed against him were unconstitutional, we affirm.

## Background

On the evening of February 22, 2015, Martinez attended a family birthday party at his aunt's house. Among the attendees were three of Martinez's cousins—Amanda Davalos and her brothers, Moses and Alfredo "A.J." Lopez. Also in attendance was Amanda's fiancé, the complainant, Mitchell Briddick.

According to Moses's and Amanda's trial testimony, everyone at the party was drinking alcohol that night, and the spirit was festive. Late in the evening, the complainant left the gathering to drive Martinez home, and A.J. joined them. Approximately 20 minutes later, all three men returned to the house. The attitude had changed, and Moses testified that the complainant slammed his car door and said "something angry" to Martinez, before walking into the house.

Martinez walked into the yard, asking what he had done wrong. Moses testified that he understood that the complainant was upset because of Martinez's ungratefulness after "one too many stops and already a free ride."

Amanda described the complainant as frustrated and flustered. But after she talked to the complainant to calm him down, the couple went back outside on the

2

porch to join the party. Out on the porch, Martinez continued to ask the complainant what he had done wrong. Amanda encouraged the complainant to let the issue pass so everyone could enjoy the evening. Martinez, however, would not let it go, and started "throwing words to [the complainant] and basically telling him he could beat him up" in an aggressive, angry voice. To smooth things over, the complainant apologized and extended his hand to Martinez. Martinez refused to shake hands, and instead continued to deride the complainant. After 15 or 20 minutes of taunting, the complainant stood up and walked toward Martinez, telling him he would give him "the opportunity to end it for good."

The two men "went for each other," and the complainant punched Martinez in the face. Moses ran over to the complainant to keep him off of Martinez because the complainant was bigger; A.J. held Martinez back. At this point, Moses heard the complainant say "Oh you want to stab me. You want to stab me," and saw a pocketknife in Martinez's hand. Moses then realized that Martinez had stabbed the complainant "on the left side by his stomach." Moses grabbed the pocketknife from Martinez's hand, threw it in a ditch, and told Martinez to leave.

Martinez testified at trial. Describing his conversation with the complainant during the car ride, he stated that the complainant became upset because Martinez had asked Amanda to take him home. Martinez also stated that he did not have enough money to pay for the complainant's gas, and that when he remembered that

3

he had forgotten his phone charger and sweater, he asked the complainant to take him back to the party to get them. Martinez testified that the complainant became upset and refused to take him home, and said "when I get out of this truck I'm going to whip your ass."

Martinez admitted that, once back at the party, he taunted the complainant. As to the fight, Martinez stated that the complainant came at him and struck him on the forehead, and that he fell to the ground. He testified that he was afraid for his life because the complainant was about 83 pounds heavier and 5 or 6 inches taller than him, and that previous surgery for a traumatic brain injury had left the back of his head vulnerable. He stated that he pulled out his pocketknife and stabbed the complainant to "defend [him]self and get [the complainant] off of [him]." He said that he acted in self-defense, and did not intend to kill or seriously injure the complainant. After he stabbed the complainant, Martinez "threw the knife down and left."

Officer T. Rodriguez of the Houston Police Department was dispatched to the scene. He saw the complainant lying on the ground, his intestines protruding from the stab wound. After an ambulance arrived and took the complainant to the hospital, Rodriguez searched the area and discovered the bloody pocketknife in the garden. About an hour later, Moses and A.J. informed him that the perpetrator, Martinez, had returned.

Officer Rodriguez saw Martinez sitting on the porch, as if "he was just hanging out there." He took Martinez into custody, observing his demeanor to be very arrogant and noting that he did not appear to have any injuries. Martinez did not complain of pain or request medical attention.

The complainant died because of the stab wound.

## Ineffective Assistance

Martinez argues that his counsel was ineffective in failing to request (1) a jury instruction on the lesser-included offense of manslaughter, and (2) limiting and "burden of proof" instructions on his prior conviction. Martinez did not raise these issues below. On this silent record, we cannot conclude that Martinez's counsel was ineffective.

### A.    Legal Framework

To prevail on a claim of ineffective assistance of counsel, an appellant must show that (1) his trial counsel's performance fell below an objective standard of reasonableness, and (2) there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687–88, 694, 104 S. Ct. 2052, 2064, 2068 (1984); *Lopez v. State*, 343 S.W.3d 137, 142 (Tex. Crim. App. 2011).

We indulge a strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689, 104 S. Ct.

5

at 2065; *Ex parte White*, 160 S.W.3d 46, 51 (Tex. Crim. App. 2004). Absent contrary evidence, we will not second-guess counsel's strategy through hindsight. *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001) ("[I]n the absence of evidence of counsel's reasons for the challenged conduct, an appellate court commonly will assume a strategic motivation if any can possibly be imagined. . . .") (internal quotation omitted); *see also Blott v. State*, 588 S.W.2d 588, 592 (Tex. Crim. App. 1979).

An appellant must provide a record that affirmatively demonstrates that counsel's performance was not based on sound trial strategy. *Mallett v. State*, 65 S.W.3d 59, 63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999). In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (citing *Thompson*, 9 S.W.3d at 813–14). This is because the reasonableness of trial counsel's choices often involves facts that do not appear in the appellate record; thus, trial counsel should ordinarily be given an opportunity to explain his actions before a court reviews the record and determines that counsel was ineffective. *See Mitchell v. State*, 68 S.W.3d 640, 642 (Tex. Crim. App. 2002); *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003).

If trial counsel is not given an opportunity to explain his actions, "then the appellate court should not find deficient performance unless the challenged conduct was 'so outrageous that no competent attorney would have engaged in it.'" *Menefield v. State*, 363 S.W.3d 591, 593 (Tex. Crim. App. 2012) (quoting *Goodspeed*, 187 S.W.3d at 392).

## B.    Analysis

On this record, we cannot conclude that counsel was ineffective with regard to either the manslaughter or prior conviction instructions. Counsel's conduct was not so outrageous that no competent attorney would have engaged in it. *See Goodspeed*, 187 S.W.3d at 392.

### 1.    Manslaughter Instruction

Martinez argues that his trial counsel was ineffective for failing to request an instruction on the lesser-included offense of manslaughter. Martinez has not provided us with a record showing counsel's reason for omitting the instruction.

Manslaughter is a lesser-included offense of murder. *Cavazos v. State*, 382 S.W.3d 377, 384 (Tex. Crim. App. 2012). A person commits murder if he intentionally or knowingly causes the death of an individual, or intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual. TEX. PENAL CODE § 19.02(b)(1), (2). A person commits manslaughter if he recklessly causes the death of an individual. *Id.* § 19.04(a). For

these purposes, reckless means that a person "was aware of and consciously disregarded" a substantial and unjustifiable risk. *Alonzo v. State*, 353 S.W.3d 778, 782 (Tex. Crim. App. 2011); *see also* TEX. PENAL CODE § 6.03(c).

When requested, "a defendant is entitled to an instruction on a lesser included offense [when] . . . there is some evidence in the record that would permit a jury rationally to find that if the defendant is guilty, he is guilty only of the lesser included offense." *Hall v. State*, 225 S.W.3d 524, 536 (Tex. Crim. App. 2007) (internal quotations omitted).

On this record, trial counsel may have strategically decided to refrain from requesting (or declining to object to the lack of) a manslaughter instruction.[1] Counsel might have determined, for instance, that because a manslaughter theory was inconsistent with Martinez's testimony that he stabbed the complainant out of fear for his life (in self-defense), presenting the theory would have undermined Martinez's credibility. *See Romero v. State*, No. 01-03-00558-CR, 2004 WL 2677124, *5 (Tex. App.—Houston [1st Dist.] Nov. 24, 2004, pet. ref'd) (mem. op., not designated for publication) ("[A] jury could have perceived manslaughter to be inconsistent with self-defense and with appellant's testimony that he shot at

---

[1] The original draft of the jury charge included manslaughter and aggravated assault, but after a hearing off the record, the manslaughter instruction was removed. Martinez had no objections to the final jury charge, which included aggravated assault.

[complainant] because he feared for his life, [so] we cannot conclude that appellant's trial counsel was ineffective for strategically opting to pursue only the defense of self-defense."); *Shanklin v. State*, 190 S.W.3d 154, 160–61, 161 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd) ("[I]t may not be sound strategy to present inconsistent defenses."); *see also Okonkwo v. State*, 398 S.W.3d 689, 697 (Tex. Crim. App. 2013) (counsel not ineffective in not requesting mistake of fact instruction because, he explained, it was inconsistent with theory that he advanced at trial, and could have misled jury as to burden of proof). On this record, we cannot conclude that no competent attorney would have made counsel's decision.

Martinez has accordingly failed to prove this ineffective assistance claim. *See, e.g.*, *Washington v. State*, 417 S.W.3d 713, 726 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (defendant "failed to show deficient performance" because "[t]he decision to not request a lesser included could have been strategic" and because "the record contains no explanation for trial counsel's failure to request a manslaughter instruction"); *Williams v. State*, No. 01-07-00632-CR, 2009 WL 350608, *4 (Tex. App.—Houston [1st Dist.] Feb. 12, 2009, no pet.) (mem. op., not designated for publication) (similar); *Stevens v. State*, No. 01-07-00111-CR, 2008 WL 2743947, *15 (Tex. App.—Houston [1st Dist.] July 10, 2008, no pet.) (mem. op., not designated for publication) ("[W]e cannot conclude that defense counsel's decision

9

not to request the lesser-included offense of manslaughter was so outrageous that no competent attorney would have engaged in it.").

We are unpersuaded by Martinez's arguments to the contrary. First, Martinez points us to *Vasquez v. State*, in which the Court of Criminal Appeals found ineffective assistance when counsel failed to request an instruction on the defendant's *only* available defense. *See* 830 S.W.2d 948, 949, 951 (Tex. Crim. App. 1992). The Court held that counsel should have recognized that the defendant had "nothing to lose" by requesting the defensive instruction, and that, without it, his conviction was "a foregone conclusion." *Id.* at 951. *Vasquez* is not controlling here because manslaughter was not Martinez's only defense. Instead, the jury heard instructions on self-defense and the lesser-included offense of aggravated assault.

*Mejia v. Stephens*, No. 6:13-CV-47, 289 F. Supp. 799 (S.D. Tex. 2017), on which Martinez relies, also does not compel a different result. In *Mejia*, the Southern District of Texas held, on that particular record, that an attorney's decision to request only a self-defense instruction and not also a manslaughter one was not valid trial strategy. *Id.* at 811. But, unlike here, counsel in *Mejia* offered an explanation for his decision, and that explanation showed that he acted based on "a misunderstanding of, and insufficient investigation into, the law." *Id.* at 810. The court did not hold, contrary to our precedent, that a decision to forego a manslaughter instruction could never be a valid trial strategy.

This record presents no ineffective assistance with regard to the manslaughter instruction.

### 2. Extraneous Offense Instructions

This record also shows no ineffective assistance based on counsel's failure to request limiting and burden of proof instructions on Martinez's prior conviction.

Under Rule of Evidence 404(b), evidence of other crimes, wrongs, or acts is not admissible to prove the character of the defendant, but may be admissible for other legitimate purposes. TEX. R. EVID. 404(b); *see also Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011). If evidence has been admitted for a specific other purpose, then the trial court must—upon request—include a limiting instruction that the jury may consider the evidence only within its proper scope. TEX. R. EVID. 105(a). When the defendant has properly requested a limiting instruction, the court must also include an instruction not to consider evidence unless the jury finds beyond a reasonable doubt that the defendant committed the extraneous offenses. *Delgado v. State*, 235 S.W.3d 244, 251 (Tex. Crim. App. 2007); *Ex parte Varelas*, 45 S.W.3d 627, 631–32 (Tex. Crim. App. 2001).

We start with the limiting instruction. Once again, Martinez's trial counsel had no opportunity to explain, and we cannot conclude that his decision not to request an extraneous offense limiting instruction was unreasonable under the first *Strickland* prong. As part of his trial strategy, trial counsel may have chosen not to

11

request a limiting instruction to avoid reminding the jury of Martinez's prior conviction. *See, e.g.*, *Garcia v. State*, 887 S.W.2d 862, 881 (Tex. Crim. App. 1994) (failure to request limiting instruction strategically valid decision to avoid calling further attention to extraneous acts); *McNeil v. State*, 452 S.W.3d 408, 415 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (reasonable trial strategy to omit request for extraneous-offense instructions "because [counsel] did not want any further attention to be drawn to potential extraneous offenses or misconduct committed by the defendant"); *Agbogwe v. State*, 414 S.W.3d 820, 838 (Tex. App.—Houston [1st Dist.] 2013, no pet.) ("It is reasonable to conclude . . . [that] defense counsel decided that seeking an instruction to disregard [testimony concerning an altercation between defendant and his previous business partner] would only bring further attention to it."); *Williams v. State*, No. 01-14-00165-CR, 2015 WL 1135715, at *9 (Tex. App.—Houston [1st Dist.] Mar. 12, 2015, pet. ref'd) (mem. op., not designated for publication) (counsel could have rationally believed that extraneous-offense limiting instruction may confuse jury). We cannot conclude that no competent attorney would have made this decision.

Martinez has not met his burden to demonstrate that his trial counsel's failure to request an extraneous offense limiting instruction rendered his representation deficient. *See Strickland*, 466 U.S. at 687–89, 104 S. Ct. at 2064–65; *Dukes v. State*, 486 S.W.3d 170, 182 (Tex. App.—Houston [1st Dist.] 2016, no pet.) ("Texas courts

have consistently held that the decision whether to request a limiting instruction may be a matter of trial strategy."); *Agbogwe*, 414 S.W.3d at 837 ("The failure of defense counsel to request a limiting instruction is not, by itself, ineffective assistance."); *Howland v. State*, 966 S.W.2d 98, 105 (Tex. App.—Houston [1st Dist.] 1998) ("Absent something in the record explaining why counsel did not request a rule 105(a) limiting instruction during trial, we cannot say counsel's action was not sound trial strategy."), *aff'd on other grounds*, 990 S.W.2d 274 (Tex. Crim. App. 1999).[2]

Martinez similarly fails to show ineffective assistance on counsel's failure to request a burden of proof instruction—an instruction that the jury cannot consider the extraneous offense unless they jury finds beyond a reasonable doubt that the defendant committed the offense. Without addressing *Strickland's* first prong, we conclude that Martinez cannot satisfy the second *Strickland* prong on this point. Martinez admitted that he committed the extraneous offense at issue (assault of a family member), and he was previously convicted of it beyond a reasonable doubt. Moreover, the State did not even mention the prior conviction in closing argument.

---

[2]     *See also Delgado v. State*, 235 S.W.3d 244, 250 (Tex. Crim. App. 2007) ("[T]he decision of whether to request a limiting instruction concerning the proper use of certain evidence, including extraneous offenses, may be a matter of trial strategy."); *cf. Ex parte Varelas*, 45 S.W.3d 627, 632 (Tex. Crim. App. 2001) (orig. proceeding) (holding performance deficient when, unlike here, trial counsel submitted affidavit stating that his failure to request omitted instructions was not product of trial strategy, but was "simply an oversight").

*See Burks v. State*, 227 S.W.3d 138, 152 (Tex. App.—Houston [1st Dist.] 2006, pet. ref'd) ("[P]rior convictions have previously been adjudicated and subjected to judicial testing and have therefore already been proven beyond a reasonable doubt."); *Bluitt v. State*, 137 S.W.3d 51, 54 (Tex. Crim. App. 2004) ("Giving such an instruction is a useless act if no unadjudicated offenses have been introduced."); *Najar v. State*, No. 08-04-00285-CR, 2006 WL 2784417, at *4 (Tex. App.—El Paso Sept. 28, 2006, pet. ref'd) (not designated for publication) ("Given the jury charge as a whole, the lack of undue emphasis on the extraneous offense evidence by the State, and the state of the evidence against [defendant], we conclude that [defendant] was not harmed by any improper omission of a reasonable doubt instruction in the guilt-innocence charge."). Martinez has not demonstrated a reasonable probability that the result of the trial would have been different had his trial counsel requested the instructions. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068; *Lopez*, 343 S.W.3d at 142.

## Constitutionality of Costs Assessment

Finally, Martinez argues that the Code of Criminal Procedure's witness and mileage fees are unconstitutional as applied to him. Specifically, he argues that the $210 assessed against him violated his constitutional confrontation and compulsory process rights. U.S. CONST. amend. VI; TEX. CONST. art. I § 10; *see also* TEX. CODE CRIM. PROC. art. 102.011(a)(3), (b) (mandating—after a defendant is convicted of a

14

felony or misdemeanor—the assessment of a $5 fee for summoning witnesses and a 29 cents-per-mile fee for mileage required for an officer to perform this service).

Our precedent disagrees. We have held these fees constitutional on almost identical arguments, and Martinez offers us no basis to reach a different conclusion in his case. *London v. State*, 526 S.W.3d 596, 598 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *see also Macias v. State*, 539 S.W. 3d 410, 421–24 (Tex. App.—Houston [1st Dist.] pet. ref'd) (following *London*); *Castello v. State*, – S.W.3d –, 2018 WL 2660520, at *5–7 (Tex. App.—Houston [1st Dist.] June 5, 2018, no pet. h.).

## Conclusion

We affirm the judgment of the trial court.

Jennifer Caughey
Justice

Panel consists of Justices Bland, Lloyd, and Caughey.

Do not publish. TEX. R. APP. P. 47.2(b).