**Affirmed and Memorandum Opinion filed August 29, 2024**



In The

# Fourteenth Court of Appeals

## NO. 14-23-00275-CR

**STEVEN CHAVEZ FLOREZ, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 20-CR-0336**

## MEMORANDUM OPINION

In two issues, appellant Steven Chavez Florez appeals his conviction and life sentence for the offense of continuous sexual abuse of a child under fourteen years old. He first complains that his trial counsel was ineffective in his representation in three respects—that during the guilt/innocence phase of trial he should have objected to "victim impact" evidence and that he opened the door to permit extraneous offense testimony, and that during the punishment phase, he failed to object to the State's introduction of appellant's penitentiary packet. In his second

issue, he asks that we review the trial for factual sufficiency on his sole contention that the State provided no physical evidence. We affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Outcries by two different young girls, Mariska and Daisy,[1] made in the Decembers of 2017 and 2019, prompted two Galveston County investigations which led to appellant, Steven Chavez Florez, and resulted in his indictment for the felony offense of continuous sexual abuse of a child under fourteen years old.

*Mariska's Outcry in 2017*

Mariska was born on January 8, 2007. Mariska's father was a longtime friend of appellant, who Mariska knew since she was young, such that Mariska referred to appellant as "Uncle Stevie." In June 2016, Mariska's parents were separating, but were on speaking terms and had mutual friends.

Mariska's father described Mariska's outcry as occurring during the holidays in 2016 when he had asked all his children if they had been touched inappropriately. His other children denied any occurrence, but Mariska did not immediately respond. Mariska told her father that the appellant had touched her.

Mariska would eventually tell her father about a night at their family friend's apartment in the summer.[2] Mariska told her father that as she was in the bathroom getting ready to take a bath appellant walked into the bathroom with her and gave Mariska a bath. Her father said Mariska, who was nine years old at the time, did not need any help in bathing. Mariska said that, as she was putting her clothes back on, appellant helped her put her clothes back on and stroked her vagina. Her father

---

[1] To protect all the minors' identities, we have not used their actual names. *See* Tex. R. App. P. 9.8.

[2] Father recalled the night personally because he had dropped off pull-ups for Mariska at the friend's apartment and saw appellant there when he delivered the items.

said Mariska did not need any help in putting her clothes back on.

Mariska's father discussed the matter with Mariska's mother and called the appellant several times, and the appellant insisted that there was a misunderstanding. Mariska's father teetered on the idea of confronting appellant but elected to call the police.

*Daisy's Outcry in 2019*

Daisy was born on September 14, 2014. Daisy's biological father shot her and rendered her a paraplegic when she was one and a half years old. While the shooting was being investigated, Daisy's grandmother, took custody of Daisy with the approval of Child Protective Services (CPS).[3] After Daisy was shot, Daisy's mother, Jessica, remained in a relationship with Daisy's biological father, but they later divorced when there was an incident between the two of them. Shortly after her mother's divorce, Daisy's mother began dating appellant. In the summer of 2017, Daisy and her older brother were eventually returned to their mother's custody.[4] After returning to her mother's house, Daisy lived with Jessica and the appellant, whom she considered to be her step-father.

Daisy's outcry was prompted when she came over to spend some time with her grandmother. Daisy had taken a shower and her grandmother was preparing to put her clothes back on when she noticed that Daisy's bottom or "private parts" were red. Daisy's grandmother testified that she asked Daisy, "Why are you red

---

[3] Daisy's grandmother already had custody of Daisy's older brother because of previous abuse that had been inflicted upon Daisy's older brother.

[4] Because she was a paraplegic, Daisy could not urinate on her own, and she required the use of a catheter. Several family members were trained on the use of this catheter. When Daisy was staying with Daisy's grandmother, she would use the catheter to help Daisy urinate, and when Daisy was staying with Jessica, Jessica would use the catheter to help Daisy urinate. A suppository was used for Daisy's bowel movements. Daisy also wore a device on her legs to help them to remain straight.

3

down here?" Daisy put her hands over her eyes, and she began to panic. Daisy's grandmother told her, "It's okay. You're not in trouble. You're not going to be in trouble. I just need to know why are you red right here?" Daisy's grandmother reported Daisy said that the appellant had been putting his "privates" on her. Daisy's grandmother reported she asked Daisy if she could be mistaken about what occurred or who did it, and Daisy said that she was not mistaken. Daisy's grandfather also heard this conversation, and they called CPS, who told them to take Daisy to the hospital. Tami McCreight, a sexual assault nurse examiner at the University of Texas Medical Branch in Galveston, observed Daisy's vagina, and she saw the abnormal redness.

Daisy reported to Ms. McCreight that the appellant had been touching her vagina with his penis. Daisy stated that the appellant had been touching her with his "privates," and that the last time that the appellant touched her was on the previous day. Daisy's grandmother reported to McCreight that appellant had been doing this "all the time."

*Indictment and Trial*

On November 3, 2022, appellant was indicted for the felony offense of continuous sexual abuse of a child under fourteen years old involving the two complainants, Mariska and Daisy. The multiple offenses were alleged to have occurred between May 16, 2016 and June 1, 2019. Appellant pled not guilty and his case was tried to a Galveston County jury.

In addition to the testimony of their respective outcry witnesses, the jury heard testimony from each of the complainants, some of their family members, their forensic interviewers and medical examiners, the CPS investigator associated with Daisy's household, and law enforcement officers.

Though she was nine when the alleged events occurred, Mariska was sixteen

4

at the time of trial, and testified that she was touched by appellant in both a bathroom and bedroom of a family friend's apartment in the summer of 2016. Mariska testified that appellant entered the bathroom where she was to change into pajamas and a pull up. Mariska stated that appellant touched her vagina, and later that night laid between her and her brother. Mariska testified that appellant reached underneath her clothes and touched her breasts. Mariska's brother could not confirm these events and stated that he was asleep. Mariska also testified that at times appellant told her, "Let me see [her vagina] when I want to, or else." She reported appellant told her he wanted no one else to see her vagina, except for him.

Daisy was eight years old at the time of trial. Though she would waiver and contradict herself at times, parts of her testimony established that appellant used his penis in order to touch her vagina, and he also touched Daisy's anus with his penis. She testified that when he touched her with his penis she was naked, they were in the bedroom, and typically alone. She testified that she knew that what the appellant was doing to her was wrong, and that she often told the appellant that she did not want him doing that to her.

Cheryl McCarty, a forensic interviewer with the Children's Advocacy Center of Galveston County, testified about her interviews with both girls.[5] Her testimony assisted in clarifying Daisy's understanding of the events that occurred with respect to anatomical components. McCarty testified that she met with Daisy on December 30th, 2019. The pertinent part as recalled by McCarty:

"A. [Daisy] shared with me that her stepdad [appellant] had touched her tee tee with his weenie.

Q. And when you -- are you able to determine -- do you ask the child what she means by those names?

---

[5] McCarty testified that she met with Mariska on January 3, 2017, who told her specific details of multiple instances of sexual abuse that the appellant had committed against her.

5

A. Yes.

Q. And what is her tee tee?

A. Her tee tee was her vagina.

Q. And what is his weenie?

A. She identified that as the penis….”

The physical evidence presented at trial was not extensive, but some testimony and evidence assisted in reconciling this perceived deficiency. No DNA evidence was offered with respect to Mariska whose outcry was nearly six-months of alleged abuse. Nurse practitioner Gerardo-Lopez testified it is common for no finding of abuses under circumstances where the body has had such time to heal. The DNA evidence offered with respect to Daisy was limited. Jacaranda Solis, a forensic scientist in the biology and D.N.A. Section of the Texas Department of Public Safety Crime Laboratory in Houston confirmed semen and one sperm cell were detected around Daisy's anus. However, Ashley Kibbe another forensic scientist in the D.N.A. Section at the Texas Department of Public Safety's Crime laboratory in Houston testified that “There was no D.N.A., no male D.N.A. detected or no Y-S-T-R profile obtained.” Tami McCreight another nurse practitioner, agreed that several factors could contribute to the absence of other physical evidence with respect to Daisy, including the fact that Daisy “changed underwear, brushed teeth, defecated, wiped or washed the genitals, had food or drink, changed clothes, and catheterized every four hours.” She also explained repetitive conduct when “it's something that occurred over and over and the body gets use to that or the vaginal area gets used to that.”

The State also presented proof to established facts to that could support the suggestion of grooming behavior toward both Mariska and Daisy. Prior to the time that the appellant began touching Mariska, he gave her a ring made of a candy wrapper. Mariska testified that appellant sat Mariska down onto his lap when he

6

gave her the ring and began referring to her as his wife. When no one was looking, the appellant would also kiss Mariska on her lips. She testified, "It was just gross. He would like put his lips over mine like covering over my lips. All I felt was like his saliva and stuff."

Similarly, Daisy's grandmother, recalled the first time she met appellant seeing appellant kiss Daisy on the lips when assisting her in the car. She testified that she thought to herself that the appellant did not even know Daisy yet.

Appellant's trial counsel, whose assistance is questioned by appellant in this appeal, did not object to the admission of evidence concerning appellant's kissing of the girls. In closing argument however, appellant's counsel addressed these "creepy" behaviors, recognized them as off-putting, but wove these instances within the context of appellant's "misunderstanding" defense. Appellant's trial counsel participated throughout the trial, lodging objections, cross-examining the state's witnesses, and calling three of his own witness. Throughout the trial he sought to challenge Daisy's credibility by showing multiple variations in her story, showing flaws in the police investigation, a prior outcry by Daisy against "grampa," and emphasizing the lack of physical evidence linking appellant to the alleged offenses. At closing, he made comprehensive run-through of the evidence and pointed out perceived flaws.

The jury found the appellant guilty as charged in the indictment, and the trial court assessed the appellant's punishment at life in prison. Appellant timely appealed.

## II. SUFFICIENCY OF THE EVIDENCE

In his second issue, appellant asks that we review the evidence to support his conviction for *factual* sufficiency. We must decline. *See Dowling v. State*, 608 S.W.3d 896, 898–99 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *see also*

7

*Rancoco v. State*, No. 14-21-00632-CR, 2023 WL 3376659, at \*7 (Tex. App.—Houston [14th Dist.] May 11, 2023, no pet.)(collecting recent cases rejecting calls for *factual* sufficiency review in a criminal case). And though appellant has made no request for a *legal* sufficiency review, and despite that he specifically requests a review that "begins with a presumption that the evidence is legally sufficient to sustain the conviction," by operation of law, we review the evidence to support his conviction for *legal* sufficiency. *See Dowling*, 608 S.W.3d at 898.

In evaluating a challenge to the legal sufficiency of the evidence supporting a criminal conviction, we view the evidence in the light most favorable to the verdict. *Wesbrook v. State*, 29 S.W.3d 103, 111 (Tex. Crim. App. 2000). The issue on appeal is not whether we, as a court, believe the State's evidence or believe that appellant's evidence outweighs the State's evidence. *Wicker v. State*, 667 S.W.2d 137, 143 (Tex. Crim. App. 1984). The verdict may not be overturned unless it is irrational or unsupported by proof beyond a reasonable doubt. *Matson v. State*, 819 S.W.2d 839, 846 (Tex. Crim. App. 1991). The jury "is the sole judge of the credibility of the witnesses and of the strength of the evidence." *Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999). The jury may choose to believe or disbelieve any portion of the witnesses' testimony. *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When faced with conflicting evidence, we presume the jury resolved conflicts in favor of the prevailing party. *Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Therefore, if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt, we must affirm. *McDuff v. State*, 939 S.W.2d 607, 614 (Tex. Crim. App. 1997).

A person 17 years of age or older commits the offense of continuous sexual abuse of a young child if, "during a period that is 30 or more days in duration, the person commits two or more acts of sexual abuse" against a child younger than 14

years of age, "regardless whether the acts of sexual abuse are committed against one or more victims." Tex. Penal Code Ann. § 21.02(b)(1). Consistent with section 21.02(b)(1), the State indicted appellant on allegations that between May 1, 2016 and June 1, 2019, appellant committed two or more acts of sexual abuse. Both the indictment and the jury charge provided seven application paragraphs, alleging a felony indecency offense in connection with Mariska, and the remaining six in connection with Daisy, comprising of three felony indecency offenses and two felony offenses of aggravated sexual assault of a child.

Appellant's sole argument to support his second issue is a generic complaint that trial record contains "no physical evidence" to support the jury's verdict. We need not belabor this argument. It is well-settled a legal sufficiency review does not demand a particular form of evidence, including the presentation of physical evidence to support a judgment. *Pena v. State*, 441 S.W.3d 635, 641 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)(absence of DNA or fingerprint evidence not required to support conviction in murder trial); *Ponce v. State*, No. 01-18-00224-CR, 2020 WL 3422289, at *3 (Tex. App.—Houston [1st Dist.] June 23, 2020, pet. ref'd)(noting in appeal of continuous sexual abuse of a child conviction that physical evidence not required); *Torres v. State*, No. 14-22-00275-CR, 2023 WL 4783535, at *4 (Tex. App.—Houston [14th Dist.] July 27, 2023, pet. ref'd)(collecting cases). And more specifically, in cases such as the one at hand, we have frequently held that the testimony of a child-victim alone is sufficient to support a jury's verdict. *Bargas v. State*, 252 S.W.3d 876, 888 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd)(concluding the "detailed account" of child victim, "despite unsophisticated terminology and rough time frame of events," accompanied by child's identification of sexual organs with anatomically correct demonstrative would be sufficient to support conviction even if unsupported by

any other evidence); *Carr v. State*, 477 S.W.3d 335, 338 (Tex. App.—Houston [14th Dist.] 2015, pet. ref'd).

Mariska testified that the appellant engaged in several instances of inappropriate touching of her beginning in June 2016. Mariska testified that there was an occasion that the appellant touched her vagina. After engaging in this conduct, appellant soon thereafter moved his hand underneath Mariska's shirt, and he moved his hand repeatedly over Mariska's breasts. Over the winter break in 2016, Mariska later told her father that the appellant had touched her vagina on several occasions. Mariska later told the forensic interviewer and a nurse practitioner specific details of several instances of sexual abuse that the appellant had committed against Mariska. Appellant's conduct committed against Mariska—as shown in the record through the testimony of Mariska, her father, McCarty (the forensic interviewer), and Gerardo-Lopez (nurse)—constituted multiple instances of the commission of the offenses of indecency with a child and aggravated sexual assault of a child, as alleged in the indictment. See Tex. Penal Code §§ 21.11(a)(1), 22.021(a)(1)(B).

Daisy testified that the appellant—on many occasions—used his penis to touch her vagina, and he also touched her anus with his penis. Daisy later told her grandmother that the appellant had been doing this. Daisy's grandmother told medical personnel that Daisy had told her that the appellant was touching her with his penis. Daisy also told the sexual assault nurse examiner that the appellant had been touching her vagina with his penis. Daisy later told the forensic interviewer about several instances of sexual abuse committed against her, and she provided details about that sexual abuse. Daisy specifically stated that the appellant touched her vagina with his penis. Daisy also stated that the appellant also touched her anus with his penis, and that the appellant forced her to touch his penis with her hand,

10

and she said that his penis was hard when she touched it. The appellant's conduct committed against Daisy—as shown in the record through the testimony of Daisy, her grandmother, McCarty (the forensic interviewer), and Gerardo-Lopez (nurse)—constituted multiple instances of the commission of the offenses of indecency with a child and aggravated sexual assault of a child, as alleged in the indictment. See Tex. Penal Code §§ 21.11(a)(1), 22.021(a)(1)(B).

The only noticeable difference in the evidence bearing any dissimilarity from the charged offense is a date discrepancy, which is legally immaterial. Though the evidence revealed Daisy suffered multiple offenses by appellant, the only specific date when an offense against her occurred was December 13, 2019, the day before her outcry. This date is not within the range alleged, and after the last date of that range—June 1, 2019—that the charged offense was alleged "on or about" to have occurred. "It is well settled that the 'on or about' language of an indictment allows the State to prove a date other than the one alleged in the indictment as long as the date is anterior to the presentment of the indictment and within the statutory limitation period." *Sledge v. State*, 953 S.W.2d 253, 256 (Tex. Crim. App. 1997); *Arcia v. State*, 12 S.W. 599 (Tex. Ct. App. 1889). In this case, the more recently proven date neither offends the statute of limitations, nor the 30-day duration required under the Penal Code provision. The December 13, 2019 offense occurred at least 10 months before appellant was indicted, and well more than 30 days after the offense proven against Mariska.

Upon this record, we conclude the evidence was sufficient to show that, during a period that was 30 or more days in duration, the appellant committed at least two acts of sexual abuse against children who were younger than 14 years of age. See Tex. Penal Code § 21.02(b). *See also Pelcastre v. State*, 654 S.W.3d 579, 584-85 (Tex. App.—Houston [14th Dist.] 2022, pet. ref'd). The jurors were

11

entitled to believe the testimony of the State's witnesses over the testimony of the defense witnesses. *See Turner v. State*, 626 S.W.3d 88, 96 (Tex. App.—Dallas 2021, no pet.).

Accordingly, appellant's second issue is overruled.

### III. INEFFECTIVE ASSISTANCE OF COUNSEL

Under his first issue, appellant complains that his trial counsel rendered ineffective assistance in his representation during the guilt-innocence phase of trial and during punishment.

### Standard of Review

Both the United States Constitution and the Texas Constitution guarantee an accused the right to assistance of counsel. U.S. Const. amend. VI; Tex. Const. art. I, § 10; *see also* Tex. Code Crim. Proc. Ann. art. 1.051 (Supp.). This right necessarily includes the right to reasonably effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 686 (1984); *Ex parte Gonzales*, 945 S.W.2d 830, 835 (Tex. Crim. App. 1997). To prevail on his ineffective-assistance-of-counsel claims, appellant must prove (1) counsel's representation fell below the objective standard of reasonableness, and (2) a reasonable probability that but for counsel's alleged deficiency the result of the proceeding would have been different. *See Strickland*, 466 U.S. at 687–88; *see also Hernandez v. State*, 726 S.W.2d 53, 55 (Tex. Crim. App. 1986) (applying *Strickland* standard to ineffective-assistance claims under the Texas Constitution). In considering an ineffective-assistance claim, we indulge a strong presumption that counsel's actions fell within the wide range of reasonable professional behavior and were motivated by sound trial strategy. *Strickland*, 466 U.S. at 689; *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999); *Jackson v. State*, 877 S.W.2d 768, 771 (Tex. Crim. App. 1994). To defeat this presumption, any allegation of

12

ineffectiveness must be firmly grounded in the record so that the record affirmatively shows the alleged ineffectiveness. *Prine v. State*, 537 S.W.3d 113, 117 (Tex. Crim. App. 2017).

Trial counsel generally should be given an opportunity to explain counsel's actions before the court finds counsel ineffective. *Id.* In most cases, a direct appeal proves an inadequate vehicle for raising an ineffective-assistance claim because the record generally stands undeveloped and cannot adequately reflect the motives behind trial counsel's actions. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003); *Thompson*, 9 S.W.3d at 813–14. Faced with a silent record, we cannot know trial counsel's strategy, so we will not find deficient performance unless the challenged conduct is "so outrageous that no competent attorney would have engaged in it." *Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005); *Hart v. State*, 667 S.W.3d 774, 783 (Tex. Crim. App. 2023) ("Under these circumstances, wherein counsel has had no opportunity to explain his actions, we will assume a strategic motive, if one can be ascertained, and find counsel deficient only if his conduct was so outrageous that no competent attorney would have engaged in it or, stated differently, if no reasonable trial strategy could justify counsel's actions.").

A sound trial strategy may be executed imperfectly, but the right to effective assistance of counsel does not entitle a defendant to errorless or perfect counsel. *Robertson v. State*, 187 S.W.3d 475, 483 (Tex. Crim. App. 2006). Instead, we "review the totality of the representation and the circumstances of each case without the benefit of hindsight." *Lopez v. State*, 343 S.W.3d 137, 143 (Tex. Crim. App. 2011). Though counsel's conscious decision not to, for example, object to evidence is not insulated from review, unless the defendant overcomes the presumption that counsel's actions were based in sound trial strategy, counsel

13

generally will not be found ineffective. *Ex parte Flores*, 387 S.W.3d 626, 633 (Tex. Crim. App. 2012).

**Did appellant's trial counsel's representation fall below an objective standard of reasonableness?**

Appellant's argument is grounded on three contentions: that his trial counsel should have objected to "victim impact" evidence admitted during the guilt/innocence phase of trial, that his trial counsel opened the door for the State to offer extraneous offense testimony, and during the punishment phase, he failed to object to the State's introduction of appellant's penitentiary packet. Because appellant has neither secured proof of the reasoning of his trial counsel's strategic decision-making in a motion for new trial nor has he pointed to some instance in the record where his trial counsel revealed his strategy openly or implicitly, we consider whether the challenged conduct was so outrageous that no competent attorney would have engaged in it.

**1.** *Was appellant's trial counsel deficient in the guilt-innocence phase of trial*

Appellant flags two instances of his trial counsel's alleged deficient conduct during the guilt-innocence phase of trial.

First, he contends that his counsel "failed to object to victim impact testimony," and refers to Mariska's testimony and Daisy's grandmother's testimony. Though victim impact testimony is "generally irrelevant at the guilt phase of trial because it does not tend to make more or less probable the existence of any fact of consequence at that stage," it can be admissible as a "circumstance of the offense." *Longoria v. State*, 148 S.W.3d 657, 659 (Tex. App.—Houston [14th Dist.] 2004, pet. ref'd); *Lee v. State*, No. 01-22-00836-CR, 2024 WL 234676, at *7–8 (Tex. App.—Houston [1st Dist.] Jan. 23, 2024, no pet.)(admissible to refute defendant's alibi and tended to make it more probable that the assault

occurred as complainant alleged).

Both references are factually problematic to support appellant's argument. As for Daisy's grandmother, appellant provides no record reference to support his sole contention that she "testified without objection that Daisy was distant and withdrawn." We cannot locate such testimony having been made by Daisy's grandmother. Though we review the record of trial counsel's total representation, appellant's brief causes us to draw no focus to a particular missed objection in connection with Daisy's grandmother's testimony. *See* Tex. R. App. P. 38.1; *see also Tufele v. State*, 130 S.W.3d 267, 271 (Tex. App.—Houston [14th Dist.] 2004, no pet.)(finding appellate issue waived for failure to adequately brief the issue by showing appropriate authority).

Appellant similarly provides no record reference to Mariska's testimony and though the record at least supports appellant's contention that she had testified about having cut herself, attempted suicide and attended therapy, appellant does not acknowledge that Mariska's father testified earlier at trial about these same matters.

The record shows that appellant's counsel questioned Mariska's father about his affair and its effect on the family dynamic, and that Mariska, among others, was unhappy about it. Through appellant's counsel's cross-examination of Mariska's father also confirmed that, although appellant had responded to the accusations prompted by Mariska's outcry as a "misunderstanding," in one phone call appellant denied the allegations of sexual abuse with Mariska. Following up, the prosecutor elicited the testimony from Mariska's father without objection, that Mariska had undergone changes in her behavior had cut herself, attempted suicide and attended therapy. Appellant's counsel recrossed Mariska's father who admitted that he believed that his separation from Mariska's mother had played a

15

role in Mariska's emotional downturn.

Q. Quitting school and just general sort of growing up kind of things aren't going great right now, right?

A. That is correct.

Q. And isn't it true when that happened, you first believed that it was caused by your separation from her mother?

A. It played a role in it.

Thus, narrowly considering the challenged scope of conduct to appellant's counsel's failure to later object during Mariska's testimony, the trial court would have acted within its discretion to overrule the objection to Mariska's "victim impact" testimony appellant now suggests should have been lodged. This is because it had already been discussed in evidence, the door had been opened. Appellant's trial counsel's conduct could not be deficient in failing to lodge an objection that the trial court could properly overrule. *See Agbogwe v. State*, 414 S.W.3d 820, 835 (Tex. App.—Houston [1st Dist.] 2013, no pet.); *Burke v. State*, 371 S.W.3d 252, 257-58 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd, untimely filed).

But even expanding our review to appellant's trial counsel's failure to object to the admission of victim impact testimony when it was first admitted with Mariska's father, the record establishes that the court could have properly admitted this testimony. At the time the victim impact evidence was first introduced through Mariska's father, the record suggests that the prosecution pursued the evidence for the valid basis of refuting the defensive theory that appellant was not responsible under the suggestion that no assault had occurred, that the allegations were a "misunderstanding." Accordingly, testimony about the victim's behavior and long-term prognosis would have a tendency to make more or less probable a fact of consequence at the guilt/innocence stage—that is, whether the appellant committed

the crimes at all. Since victim impact testimony would have been admissible here, the appellant's trial attorney's failure to object to the testimony did not constitute deficient performance. *See Longoria*, 148 S.W.3d at 660.

As much as the admissibility is subject to dispute, we cannot conclude on a silent record that appellant's counsel's failure to object is "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d at 392. Arguably appellant's trial counsel's behavior in these instances provides indicia of deliberate decision making, measured restraint, and unwillingness to object to victim impact testimony when surmised he would not succeed. It shows that appellant's counsel sought some persuasive gain by emphasizing that Mariska's father admitted that he believed Mariska had suffered emotionally from matters unrelated to appellant. It also shows that during the State's subsequent examination of Mariska he made a pointed, successful objection to the prosecution's efforts to directly connect Mariska's diagnosis of PTSD to the "sexual assault from the summary of 2016."

Second, appellant contends that his counsel's conduct was deficient when his trial counsel allegedly opened the door for the State to offer extraneous offense testimony. Appellant mischaracterizes the facts to paint his trial counsel as actively opening the door to extraneous offense evidence. The record shows otherwise. Appellant notes that a defense witness testified that the appellant did not permit an investigator with CPS to interview Daisy. However, that testimony was elicited by the prosecutor on cross-examination. Also, appellant notes that, in his opening statement, his trial counsel mentioned that the appellant created a ring for Mariska, and that he called her his wife. But appellant's opening statement was made after the State had rested and testimony of those details had already been elicited by the prosecutor on direct examination of Mariska. Standing on this misappreciation of

17

the facts, appellant argues that his trial counsel "should have waited to see if the state was going to attempt to introduce the extraneous offenses." We need not address that argument, as that testimony had already been elicited by the prosecutor before ever being mentioned by defense counsel.

A party's failure to accurately convey the record in an appellate brief unnecessarily places the merits of the argument in jeopardy of not being reached. *See* Tex. R. App. P. 38.1. However, we reserve consideration whether appellant's misstatement of the record amounts to briefing waiver, and simply consider whether the challenged evidence was inadmissible, to declare appellant's trial counsel's conduct in failing to object "so outrageous that no competent attorney would have engaged in it." Ultimately, appellant complains that his counsel should have acted to prevent the admission of the State's evidence that

> (1) the appellant made a ring for Mariska out of a candy wrapper and that the appellant called Mariska his wife;
>
> (2) the appellant would kiss Mariska on her lips;
>
> (3) the appellant and his wife, Jessica, were not cooperative with CPS, to the point that the appellant would not permit a CPS investigator to enter their home, so that she could meet with and interview the children; and
>
> (4) the appellant returned to the residence, even after CPS and law enforcement had him removed from the residence

We agree with the State that this evidence—portions of Mariska's testimony and the testimony of the CPS investigator—was admissible under Article 38.37 of the Texas Code of Criminal Procedure and Rule 403 of the Texas Rules of Evidence. Article 38.37 provides:

> (b) Notwithstanding Rules 404 and 405, Texas Rules of Evidence, evidence of other crimes, wrongs, or acts committed by the defendant against the child who is the victim of the alleged offense shall be admitted for its bearing on relevant matters, including:

18

(1)    the state of mind of the defendant and the child; and

(2)    the previous and subsequent relationship between the defendant and the child.

Tex. Code Crim. Pro. art. 38.37, § 1(b).

Rule 403 provides:

The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, or needlessly presenting cumulative evidence.

Tex. R. Evid. 403.

Rule 403 favors the admission of relevant evidence and carries a presumption that relevant evidence will be more probative than prejudicial. All testimony and physical evidence are likely to be prejudicial to one party or the other. It is only when there exists a clear disparity between the degree of prejudice of the offered evidence and its probative value that Rule 403 applies. *Davis v. State*, 329 S.W.3d 798, 806 (Tex. Crim. App. 2011).

The evidence was admissible to show the appellant's state of mind in relation to Mariska and Daisy and to show the appellant's relationship with then. There was no need for the trial judge to exclude this relevant evidence because it was not unfairly prejudicial to the appellant, confusing, or misleading. If the appellant's trial attorney had objected to this evidence, the trial court would not have erred in determining that the probative value of the extraneous-offense evidence was not substantially outweighed by its prejudicial effect. *See Ryder v. State*, 581 S.W.3d 439, 453-54 (Tex. App.—Houston [14th Dist.] 2019, no pet.); *McCombs v. State*, 562 S.W.3d 748, 768 (Tex. App.—Houston [14th Dist.] 2018, no pet.).

Courts routinely uphold trial court decisions to admit such evidence in child

19

sexual abuse cases. *See e.g.*, *Romano v. State*, 612 S.W.3d 151, 159 (Tex. App.—Houston [14th Dist.] 2020, pet. ref'd) (defendant put victim onto his lap while they were sitting in a hot tub and wrapped his arms around the victim, and defendant talked with victim about male and female puberty and bodily functions).

In this case, the appellant's trial attorney was not given the opportunity to explain his reasoning for not objecting to the extraneous-offense testimony. *See Vernon v. State*, 571 S.W.3d 814, 822-23 (Tex. App.—Houston [1st Dist.] 2018, pet. ref'd). Appellant's trial attorney may have withheld an objection to this testimony because he believed it would fail; that it was admissible under Article 38.37 and Rule 403. Appellant's trial counsel did not render ineffective assistance of counsel by not objecting to admissible evidence. *See Agbogwe v. State*, 414 S.W.3d at 835; *see also Burke v. State*, 371 S.W.3d at 257-58.

Having reviewed the record of appellant's trial counsel's conduct during the guilt-innocence phase, and acknowledging the lack of evidence showing appellant's trial counsel's strategy, we find no instance of conduct "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d at 392.

**2. *Was appellant's trial counsel deficient during the punishment phase of trial***

Appellant complains that his trial counsel rendered ineffective assistance of counsel at the punishment phase when he failed to object to certain "material" contained in penitentiary packets introduced by the State. Appellant does not identify the allegedly inadmissible "material," but generally complains his counsel did not object to State's Exhibits 44 through 51, the defendant's penitentiary packets and records of prior convictions. Appellant supports his argument with two cases:

First, he relies on a forty-year-old decision from our sister court called

20

*Boyington v. State*. 738 S.W.3d 704, 708 (Tex. App.— Houston [1st Dist.] 1985, no pet.). That decision held that the State cannot introduce unadjudicated extraneous offenses at the punishment stage of the trial. *Id*. at 708 (citing *Sherman v. State*, 537 S.W.2d 262, 264 (Tex. Crim. App. 1976). This is no longer the law, nor has it been for many years. The now thirty-year-old amendment of Article 37.07 allows for the admission of unadjudicated, extraneous offenses at the punishment stage of non-capital cases. Tex. Code Crim. Proc. art. 37.07; *Jackson v. State*, 550 S.W.3d 238, 245 n.6 (Tex. App.—Houston [14th Dist.] 2018, no pet.) (*citing Williams v. State*, 958 S.W.2d 844, 846 (Tex. App.— Houston [14th Dist.] 1997, pet. ref'd)).

Second, appellant relies on the First Court of Appeals decision *Damian v. State*, to support the proposition that a defendant's trial attorney should object to the admissibility of the defendant's prior criminal record if it shows that the defendant was charged with an offense that was more serious than the offense for which he was ultimately convicted. *Damian v. State*, 881 S.W.3d 102, 113 (Tex. App.— Houston [1st Dist.] 1994, pet. ref'd) (citing *Davis v. State*, 642 S.W.2d 510, 513 (Tex. Crim. App. 1982)). Based on the current version of Article 37.07, Section 3, *Damian* is questionable authority. Even apart from the plain text of the current version of Article 37.07, *Damian* should not provide a basis for a claim of ineffective assistance of counsel. In *Donald v. State*, the defendant relied on the First Court's decision in *Damian*, but we questioned whether the First Court's decision could provide a valid basis for a claim of ineffective assistance of counsel. *Donald v. State*, 543 S.W.3d 466, 485 (Tex. App.— Houston [14th Dist.] 2018, no pet.).

In *Donald*, we acknowledged that the Court of Criminal Appeals has held that, in proving a defendant's criminal record during the punishment stage, the

21

pleadings—including indictments and other charging instruments—are admissible, even if they allege an offense greater than the one for which the defendant was convicted. *Donald*, 543 S.W.3d at 485-86 (citing *Fairris v. State*, 515 S.W.2d 921, 923 (Tex. Crim. App. 1974) (judgment admissible when it showed the defendant had been charged with robbery by firearms but convicted of robbery by assault).

At best, appellant argument is one that his counsel was deficient for making an objection under a theory of unsettled law. The Court of Criminal Appeals has routinely refused to conclude counsel ineffective for failing to take a specific action on an unsettled issue. *Donald*, 543 S.W.3d at 486 (*citing State v. Bennett*, 415 S.W.3d 867, 869 (Tex. Crim. App. 2013); *Ex parte Chandler*, 182 S.W.3d 350, 358 (Tex. Crim. App. 2005) ("[T]he rule that an attorney is not liable for an error in judgment on an unsettled proposition of law is universally recognized . . .")). The appellant's trial attorney did not render ineffective assistance of counsel in failing to object to evidence admissible at the punishment stage of the trial, and he did not render ineffective assistance of counsel in failing to rely on unsettled law. *See State v. Bennett*, 415 S.W.3d at 869.

Having reviewed the record of appellant's trial counsel's conduct during the punishment phase, and acknowledging the absence of evidence showing appellant's trial counsel's strategy, we find no instance of conduct so outrageous that no competent attorney would have engaged in it. *See Goodspeed v. State*, 187 S.W.3d at 392.

Accordingly, appellant's first issue is overruled.

## IV. CONCLUSION

Having considered and overruled each of appellant's issues, we affirm the trial court's judgment in its entirety.

/s/    Randy Wilson
       Justice

Panel consists of Chief Justice Christopher and Justices Zimmerer and Wilson.

Do not publish — TEX. R. APP. P. 47.2(b).